**BANKDIRECT CAPITAL FINANCE, LLC, a Subsidiary of Texas Capital Bank, N.A., Petitioner,**

v.

**PLASMA FAB, LLC and Russell McCann, Respondents**

No. 15-0635

Supreme Court of Texas.

Argued December 6, 2016

OPINION DELIVERED: May 12, 2017

---

**40.** Tex. Tax Code § 42.26(a)(3).

**41.** Tex. Tax Code § 42.29.

Karen Sue Neeley, Kennedy Sutherland LLP, Austin, for Amici Curiae Texas Bankers Association, Texas Mortgage Bankers Association, and The Independent Bankers Association of Texas.

Sandra Garza Rodriguez, D. Ferguson McNiel III, Vinson & Elkins, L.L.P., Houston, Amy Tankersley Perry, Vinson & Elkins L.L.P., Dallas, David B.H. Williams, David J. Strubbe, Williams Bax & Saltzman, P.C., Chicago IL, for Petitioner.

John C. Hart, Bruce H. Rogers, Brown Dean Wiseman Proctor Hart & Howell LLP, Fort Worth, Brandon Duane Gleason, J. Hampton Skelton, Skelton & Woody, Austin, Otto S. Good, Ruben Valadez, Langley & Banack, Inc., San Antonio, for Respondents.

Justice Willett delivered the opinion of the Court, in which Justice Green, Justice Lehrmann, Justice Boyd, Justice Devine, and Justice Brown joined.

*Verbis legis tenaciter inhaerendum.*

■ "Hold tight to the words of the law." This maxim, fittingly the lead epigraph to *Reading Law*,[1] captures the foremost task of legal interpretation: divining what the law *is*, not what the interpreter *wishes* it to be.

■ The lion's share of modern appellate judging is reading legislative language and decoding what it means. On that score, our interpretive precedent favors bright lines and sharp corners. If a case can be decided according to the statute itself, it must be decided according to the statute itself. This is a bedrock principle.

Today's case asks whether a notice provision in the Texas Premium Finance Act should be read as written, or instead whether the Court should adopt a "substantial compliance" approach that excuses slip-ups. We opt for the former. The Legislature has codified "substantial compliance" throughout Texas law—including in other Insurance Code notice provisions—forgiving less-than-strict conformity with various statutory commands. But it did not do so here. We decline to engraft what lawmakers declined to enact.

We affirm the court of appeals' judgment.

I

The relevant facts are both undisputed and uncomplicated.

In May 2008, Plasma Fab, LLC obtained a general liability insurance policy from Scottsdale Insurance Company and financed the policy through a premium finance agreement with BankDirect Capital Finance, LLC. BankDirect paid the annual premium to Scottsdale, and Plasma Fab made monthly payments to BankDirect.

The agreement between BankDirect and Plasma Fab included a power-of-attorney clause that gave BankDirect authority, upon Plasma Fab's default, to cancel the insurance policy, collect the unearned premiums from Scottsdale, and apply them to the loan balance. Importantly, the power-of-attorney clause granted BankDirect this cancel-and-collect authority only "after proper notice has been mailed as required by law," specifically section 651.161 of the Texas Premium Finance Act ("Cancellation of Insurance Contract"), which pre-

---

1. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS V (2012).

scribes certain notice-before-cancellation requirements.[2] One such requirement: The premium finance company must mail to the defaulting insured a notice of intent to cancel that states a time by which default must be cured, and "[t]he stated time may not be earlier than the 10th day after the date the notice is mailed."[3]

Plasma Fab was habitually late in making premium payments to BankDirect. In fact, Scottsdale, through BankDirect, had twice canceled Plasma Fab's insurance policy before due to late payments. Each time, BankDirect mailed written notice to Plasma Fab, giving notice of its intent to cancel the policy if Plasma Fab did not pay the past-due premium. Each time, Plasma Fab failed to cure its default by the scheduled cancellation date, and BankDirect directed Scottsdale to cancel the policy. Each time, Plasma Fab eventually paid the overdue premium, and BankDirect contacted Scottsdale and requested reinstatement of the policy. But this time, when Plasma Fab missed its November 2008 payment, BankDirect sent a notice of intent to cancel the policy effective December 4. The notice was dated November 24, ten days before the cancellation date. But it was not mailed until November 25, nine days before the cure deadline stated in the notice. The notice thus violated section 651.161(b) because the "stated time" in the notice was "earlier than the 10th day after the date the notice [was] mailed."[4]

Plasma Fab did not pay the past-due premium by December 4, and BankDirect sent a notice of cancellation to Scottsdale that evening. Four days later, a fire de-stroyed an apartment complex where Plasma Fab's employees worked. The next day, Plasma Fab tendered the overdue amount, and BankDirect requested that Scottsdale reinstate the policy. Scottsdale refused, citing internal procedures forbidding reinstatement of policies that have been cancelled three times. In February 2009, Plasma Fab was sued for damages arising out of the fire. Scottsdale denied coverage, and judgment for almost $6 million was ultimately rendered against Plasma Fab.

Plasma Fab and Russell McCann, its sole shareholder, sued Scottsdale and BankDirect for breach of contract, breach of fiduciary duty, deceptive trade practices, and negligent misrepresentation. Plasma Fab contended the defendants had no right to cancel the policy because BankDirect failed to comply with the Insurance Code's ten-day notice requirement. The trial court disagreed and granted summary judgment to Scottsdale and BankDirect on all claims.[5]

The court of appeals reversed as to Plasma Fab's claims against BankDirect, holding that because BankDirect mailed its notice one day late, it lacked authority to cancel the policy.[6]

## II

■ The issue is simply stated: Did BankDirect properly exercise its authority under Insurance Code section 651.161 when it cancelled Plasma Fab's insurance policy?

---

**2.** TEX. INS. CODE § 651.161.

**3.** *Id.* § 651.161(b).

**4.** *Id.*

**5.** Plasma Fab appealed the grant of Scottsdale's motion for summary judgment, and the

court of appeals affirmed. Plasma Fab does not appeal that holding here, and Scottsdale is not a party to this appeal.

**6.** *Plasma Fab, LLC v. BankDirect Capital Fin., LLC,* 468 S.W.3d 121, 127 (Tex. App.—Austin 2015).

When BankDirect mailed the cancellation notice, it was acting pursuant to the parties' finance agreement.[7] But that agreement only granted BankDirect the authority to cancel "after proper notice has been mailed as required by law," namely section 651.161(b):

> The insurance premium finance company must mail to the insured a written notice that the company will cancel the insurance contract because of the insured's default in payment unless the default is cured at or before the time stated in the notice. The stated time may not be earlier than the 10th day after the date the notice is mailed.[8]

This statutory notice provision *says* ten days, but what does it mean? Can nine-days' notice be sufficient?

BankDirect urges a "substantial compliance" approach to interpreting section 651.161(b). That is, if the stated cancellation date is less than ten days after the notice was mailed, cancellation should be deemed effective on the earliest date allowed by the statute. Here, BankDirect argues, "the 'effective on the earliest date' rule satisfies the purpose of the notice statute," adding that here, Plasma Fab

actually received *more* than the required ten days to cure its default—waiting until Day Fourteen (the day after the fire occurred) before paying the past-due November premium. The cancellation notice was thus not *in*effective; it merely *became* effective on the tenth day—December 5. This view is eminently rational. Workable. Logical. There is just one glitch: It finds no home in the statute.

Many Texas statutes have slippery language. Section 651.161(a)–(b) is not one of them. Premium finance companies "may not cancel" an insured's policy unless they mail a notice of intent to cancel that states a cure deadline that is not earlier than the tenth day after the date the notice is mailed.[9] This notice requirement is unambiguous, and "[w]here text is clear, text is determinative."[10] Plain language disallows ad-libbing, a cardinal principle we have reaffirmed regularly.[11] Bank-Direct insists "legislative intent" compels a "substantial compliance" standard, but "the truest manifestation of what lawmakers intended is what they enacted."[12] The Legislature "expresses its intent by the words it enacts and declares to be the law."[13]

---

**7.** The parties disagree on whether this power-of-attorney clause should, as a matter of contract interpretation, be strictly construed in favor of Plasma Fab, and whether the clause imposed a fiduciary duty on BankDirect. We do not reach these issues and neither approve nor disapprove of the court of appeals' treatment of them.

**8.** Tex. Ins. Code § 651.161(b).

**9.** *Id.* § 651.161(a)–(b).

**10.** *Entergy Gulf States v. Summers,* 282 S.W.3d 433, 437 (Tex. 2009).

**11.** *See Paxton v. City of Dall.,* 509 S.W.3d 247, 257 (Tex. 2017) ("We have long held a statute's unambiguous language controls the outcome."); *Combs v. Health Care Servs. Corp.,* 401 S.W.3d 623, 629 (Tex. 2013) ("[W]e read

unambiguous statutes as they are written, not as they make the most policy sense."); *Leland v. Brandal,* 257 S.W.3d 204, 206 (Tex. 2008) ("If the statute's language is unambiguous, its plain meaning will prevail."); *City of Hous. v. Jackson,* 192 S.W.3d 764, 774 (Tex. 2006) ("We decline to second-guess the Legislature's policy choice by adding language to an unambiguous statute.").

**12.** *Tex. Student Hous. Auth. v. Brazos Cty. Appraisal Dist.,* 460 S.W.3d 137, 141 (Tex. 2015).

**13.** *Molinet v. Kimbrell,* 356 S.W.3d 407, 414 (Tex. 2011). *See also, e.g., Dall. Cty. Cmty. Coll. v. Bolton,* 185 S.W.3d 868, 874 (Tex. 2005) ("[W]e decline to imply a legislative intent that is not reflected in the language of the statute.").

Our refusal to engraft a "substantial compliance" exception seems particularly prudent given how ubiquitous "substantial compliance" is throughout Texas law. The Legislature has codified it repeatedly, including in other Insurance Code notice provisions. For example, section 826.105, governing the conversion of a mutual insurance company into a stock insurance company, states, "If the converting company in good faith substantially complies with the notice requirements of this chapter, the company's failure to send a member the required notice does not impair the validity of an action taken under this chapter." [14] A near-verbatim provision in another insurance-related statute likewise forgives noncompliant notice.[15]

"Substantial compliance" needs no judicial assist. Lawmakers have sprinkled it far and wide, in numerous statutes spanning diverse categories of legislation, including the Occupations Code,[16] the Business Organizations Code,[17] the Election Code,[18] the Government Code,[19] the Local Government Code,[20] the Estates Code,[21] the Business and Commerce Code,[22] the Water Code,[23] the Finance Code,[24] the Property Code,[25] and the Health and Safety Code.[26] This record of statutory usage demonstrates one thing convincingly: When the Legislature desires a not-so-bright line forgiving noncompliance, it knows what to say and how to say it. Instead, and we must presume the Legislature acted intentionally, not inadvertently, "it chose to enact more restrictive

14. Tex. Ins. Code § 826.105.

15. *Id.* § 829.105.

16. *See* Tex. Occ. Code § 2001.314(c) (allowing for substantial compliance with the regulations governing an approved bingo worker's identification card).

17. *See* Tex. Bus. Org. Code § 152.802(k) (stating that a limited-liability company's registration is valid so long as there is substantial compliance with the chapter's registration and reporting requirements).

18. *See* Tex. Elec. Code § 18.065(a) (instructing the Secretary of State to monitor a registrar's actions for substantial compliance with various sections of the Code).

19. *See* Tex. Gov't Code § 2001.035(a) (explaining that a rule is voidable unless a state agency adopts it in substantial compliance with the Code's requirements).

20. *See* Tex. Loc. Gov't Code § 395.078 (stating that impact fees may not be held invalid due to noncompliance with notice standards when there is good faith substantial compliance).

21. *See* Tex. Est. Code § 251.104(d) (specifying that a substantially compliant affidavit is sufficient to self-prove a will).

22. *See* Tex. Bus. & Com. Code § 8.202(b)(2)(A) (applying the rules governing notices of defects of a security to government agencies after substantial compliance with legal requirements).

23. *See* Tex. Water Code § 7.257(a)(1) (granting an affirmative defense in nuisance and trespass claims for those persons in substantial compliance with various state and federal rules and regulations); *id.* § 26.034(c) (instructing the commission to assure that plans and specifications of water-treatment facilities are in substantial compliance with commission standards).

24. *See* Tex. Fin. Code § 59.304(b) (making substantial compliance with regulations prima facie evidence of adequate safety measures related to unmanned teller machines).

25. *See* Tex. Prop. Code § 53.054(a) (allowing substantial compliance with statutory requirements for an affidavit regarding a mechanic's lien).

26. *See* Tex. Health & Safety Code § 361.166(2) (instructing municipalities not to abolish or restrict solid-waste facilities operating in substantial compliance with applicable regulations); *id.* § 366.055(a) (commanding the commission to inspect sewer disposal systems for substantial compliance with the relevant regulations).

language, and we are bound by that restriction."[27] If, as BankDirect argues, judges are free to engraft "substantial compliance" whenever it seems reasonable, then the Texas statutes taking pains to codify it represent an "inexplicable exercise in redundancy."[28]

This is not to say this Court has never recognized "substantial compliance" in other statutory contexts. One example—uncited by the parties, by the court of appeals, by the amici curiae,[29] or by today's dissent—is *Roccaforte v. Jefferson County*,[30] a wrongful-termination suit brought by a deputy constable against his county employer. The county litigated the case for two-plus years and then, once limitations expired, sought dismissal complaining that Roccaforte had botched the post-suit notice requirement in section 89.0041 of the Local Government Code, which requires a person suing a county to give county officials written notice of the claim "by registered or certified mail."[31] Roccaforte's misstep? Notice was hand-delivered rather than mailed. Relying on this misstep, the county urged dismissal, but Roccaforte argued that "his substantial compliance with [the statute] should suffice."[32] The Court agreed, holding that because the county received "the requisite notice" before the statute's deadline and was able to timely answer and defend the suit, "the trial court erred in dismissing Roccaforte's claims."[33]

Today's concurring opinion cites *Roccaforte* for the suggestion that we should hold that section 651.161 allows for substantial compliance.[34] But there are fundamental distinctions between *Roccaforte* and this case. Most notably, notice there was timely; notice here was not. Indeed, deputy constable Roccaforte went beyond what the statute required, opting for foolproof notice via personal service. The county conceded its officials had received actual and timely notice of every item section 89.0041 required. *Roccaforte* concerned the *manner* of timely notice, not the *mandate*. *Roccaforte* is therefore inapplicable to today's case addressing the legal effect of missing a statutorily mandated time period. On this point, our 2009 decision in *Edwards Aquifer Authority v. Chemical Lime, Ltd.*[35] is more analogous than *Roccaforte*. In *Chemical Lime*, a permit applicant missed a statutory filing deadline that, as here, made no allowance for extensions. We explained "substantial compliance with a statute means compliance with its essential requirements," and "[a] deadline is not something one can substantially comply with."[36] While *Chemical Lime* concerned a filing deadline rather than a notice-of-cancellation deadline, the root principle, we think, is the same: Noncompliance with a statutorily fixed time limit cannot be excused under the

27. *See W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 99, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991) (refusing to interpret "attorney's fees" in 42 U.S.C. § 1988 to include "expert fees" when several other fee-shifting statutes refer to them separately).

28. *Id.* at 92.

29. The Independent Bankers Association of Texas, Texas Bankers Association, and Texas Mortgage Bankers Association filed a joint letter in support of BankDirect's petition for review.

30. 341 S.W.3d 919 (Tex. 2011).

31. Tex. Loc. Gov't Code § 89.0041(b) ("The written notice must be delivered by certified or registered mail. . . .").

32. *Roccaforte*, 341 S.W.3d at 926.

33. *Id.* at 926–27.

34. *See post* at 87.

35. 291 S.W.3d 392 (Tex. 2009).

36. *Id.* at 403.

banner of substantial compliance. The "essential requirement" of a deadline is the deadline, and, as with a missed statute of limitations, the *degree* of delay matters not: "A miss is as good as a mile."[37]

As the United States Supreme Court has explained, the notion that a post-deadline filing can be deemed compliant "is, to say the least, a surprising notion … without limiting principle," one that would invite "a cascade of exceptions that would engulf the rule."[38] By setting strict statutory deadlines, the Legislature accepts that they "necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if a filing deadline is to have any content, the deadline must be enforced…. A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day."[39]

█ In other words, absent statutory language to the contrary, a statutorily imposed time period does not allow for substantial compliance. Missing a filing deadline by one day—or giving nine days' notice instead of ten—might "substantially comply" with the statute's requirement. After all, nine is a substantial part of ten. But when it comes to statutorily required time periods, substantial compliance is insufficient.

The concurring opinion takes a different approach to reach the same result, concluding that substantial compliance is sufficient but only complete compliance is sub-stantial.[40] Relying in part on *Chemical Lime*, the concurring opinion concludes that section 651.161 as a whole allows for substantial compliance but BankDirect failed to substantially comply with section 651.161 because it failed to fully comply with section 651.161(b) and (d)'s notice and mailing requirements.[41] In *Chemical Lime*, the Court was addressing a jury finding that the applicant had substantially complied with the statute's "permit application requirements" as a whole.[42] The Court did not decide whether the statute as a whole allowed for substantial compliance but instead only assumed that it did.[43] Under that assumption, and in light of the jury's finding, the issue was whether the applicant "substantially complied with the permit application process, one requirement of which was the filing deadline."[44] But as to that specific requirement—the statutory deadline the applicant had failed to meet—the Court recognized that substantial compliance was insufficient because a deadline is simply "not something one can substantially comply with."[45]

Here, because Plasma Fab argues that BankDirect failed to comply with section 651.161(b)'s time-period requirement, we need not engage in assumptions about whether section 651.161 as a whole allows for substantial compliance. BankDirect missed a statutory time-period requirement, not a manner-of-service requirement. And under *Chemical Lime*, a statutory time-period requirement does not allow for substantial compliance—it is

**37.** *Id.*

**38.** *Id.* (quoting *United States v. Locke,* 471 U.S. 84, 100–01, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)).

**39.** *Id.* (quoting *Locke,* 471 U.S. at 101, 105 S.Ct. 1785).

**40.** *Post* at 88.

**41.** *See post* at 88 (citing Tex. Ins. Code § 651.161(b), (d)).

**42.** *Chemical Lime,* 291 S.W.3d at 402.

**43.** *Id.*

**44.** *Id.* at 403.

**45.** *Id.*

simply "not something one can substantially comply with." [46] Even if nine days' notice substantially complies with section 651.161(b)'s ten-day requirement, that requirement does not allow for substantial compliance. Similarly, the time-period requirement in section 651.161(d) is only satisfied by full compliance. [47] Subsection (d) only allows a notice of cancellation to be mailed to the insurer *after* the time stated in the notice to the insured under subsection (b). [48] So contrary to the concurring opinion's approach, we need not reach the issue of whether BankDirect substantially complied because substantial compliance with the ten-days' notice requirement in subsection (b) and the cancellation time requirement in subsection (d) is simply insufficient.

The dissenting opinion, meanwhile, reaches the opposite result, relying not on *Roccaforte* but on the extrinsic "Statute Construction Aids" in the Code Construction Act, reliance we have repeatedly branded as "improper" [49] and "inappropriate" [50] when statutory language is clear.

■ The Code Construction Act's textual definitions can *clarify* meaning, but its nontextual enticements can *cloak* meaning. That is precisely why we have often rejected the Act's thumb-on-the-scale devices, because in today's statute-laden era, *how*

we decide—legisprudence: the jurisprudence of legislation [51]—matters as much as *what* we decide. We must resist the interpretive free-for-all that can ensue when courts depart from statutory text to mine extrinsic clues prone to contrivance. The Code Construction Act offers a buffet of interpretive options, but to our credit, we have often been picky eaters, opting instead for a simpler, less-manipulable principle: Clear text equals controlling text.

■ That said, it is unquestionably helpful that the Code Construction Act "provides guidance regarding some of the words and phrases used in statutes." [52] The Legislature routinely defines terms, both in individual statutes [53] and more generically in the Code Construction Act, [54] fixing words' meanings and limiting their implications. Time-honored canons of interpretation, both semantic and contextual, can aid interpretation, provided the canons esteem textual interpretation.

Indeed, two specific definitions in the Code Construction Act are relevant in today's case: "must" and "may not." [55]

1. " 'Must' creates or recognizes a condition precedent." [56] Section 651.161(b) states that a premium finance company "*must* mail to the insured a written notice." [57]

---

46. *Id.*

47. *See* Tex. Ins. Code § 651.161(d).

48. *Id.* ("After the time stated in the notice required by Subsection (b), the insurance premium finance company may cancel [the] insurance contract by mailing a notice of cancellation to the insurer.").

49. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010).

50. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008).

51. *Legisprudence*, Black's Law Dictionary 1040 (10th ed. 2014) ("The systematic analysis of statutes within the framework of jurisprudential philosophies about the role and nature of law.").

52. *See post* at 90.

53. *See* Tex. Ins. Code § 651.001 (providing definitions for certain terms "[i]n this chapter").

54. *See* Tex. Gov't Code § 311.016.

55. *Id.* § 311.016(3), (5).

56. *Id.* § 311.016(3).

2. " 'May not' imposes a prohibition and is synonymous with 'shall not.' "[58] Section 651.161(a) states that a finance company *"may not* cancel [a policy] listed in a premium finance agreement except as provided by this section."[59] Similarly, section 651.161(b) says the date in the cancellation notice *"may not* be earlier than the 10th day after the date the notice is mailed."[60]

The definitions in the Code Construction Act thus confirm that proper notice is a condition precedent to cancelling the policy.[61] The policy *may not* (read: shall not) be cancelled absent the procedure set forth in section 651.161.[62] A premium finance company (1) *must* mail the insured notice of intent to cancel, and (2) *may not* (read: shall not) state a date in the notice less than ten days after notice is mailed.[63]

▮▮▮ The Code Construction Act does not stop at textual definitions, however. It also says judges "may consider" a host of extrinsic "Statute Construction Aids" beyond the Legislature's chosen language, "whether or not the statute is considered ambiguous on its face."[64] Judges are beckoned to weigh, among other things, the "object sought to be attained,"[65] "legislative history,"[66] "consequences of a particu-

lar construction,"[67] and "administrative construction of the statute."[68] But we have resolutely refused the Act's entreaties to disregard plain language: "We … do not resort to extrinsic aids …. to interpret a statute that is clear and unambiguous."[69] Interpretive prescriptions, or permissions, to put a finger on the scale and stretch text beyond its permissible meaning invade the courts' singular duty to interpret the laws. Section 651.161 is unambiguous, and plain language forbids open-ended improvisation, including the nontextual purposivism and consequentialism winked at in the Code Construction Act. Our aversion to extratextual impulses is less prudish than prudent: If it is not necessary to depart, it is necessary not to depart.

The dissent favors a "just and reasonable" outcome.[70] Respectfully, our role is to be neither generous nor parsimonious. Statutes that impose timelines naturally burden those who miss them. We must resist the temptation to alter a statute to realign perceived inequities, particularly when the Legislature has proven itself adept at enacting lenient "substantial compliance" language when it wishes. Our text-centric approach abjures the desire to cushion statutory strictness: "Although such results may seem harsh, they are mandated by the statutory lan-

---

57. TEX. INS. CODE § 651.161(b) (emphasis added).

58. TEX. GOV'T CODE § 311.016(5).

59. TEX. INS. CODE § 651.161(a) (emphasis added).

60. *Id.* § 651.161(b) (emphasis added).

61. TEX. GOV'T CODE § 311.016(3); TEX. INS. CODE § 651.161(a)–(b).

62. TEX. INS. CODE § 651.161(a).

63. *Id.* § 651.161(b).

64. TEX. GOV'T CODE § 311.023.

65. *Id.* § 311.023(1).

66. *Id.* § 311.023(3).

67. *Id.* § 311.023(5).

68. *Id.* § 311.023(6).

69. *Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016) (citing *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013)).

70. *Post* at 90.

guage...."[71] This provision, unlike others, insists on actual, as opposed to substantial, compliance.

■ A "substantial compliance" approach is undeniably pragmatic, but we read unambiguous statutes as written, "not as they make the most policy sense."[72] "Substantial compliance" may scratch an equitable itch, but "law, without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and introduce most infinite confusion."[73]

■ The parties contractually made notice "as required by law" a precondition to cancellation.[74] BankDirect failed to meet the law's unambiguous requirements, and the Legislature enacted an austere consequence for noncompliance: BankDirect "may not cancel" the policy.[75] Insufficient notice equals ineffective notice. The text is the alpha and the omega of the interpretive process. And when faced with unequivocal language, "the judge's inquiry is at an end."[76]

## III

Separation of powers demands that judge-interpreters be sticklers. Sticklers about not rewriting statutes under the guise of interpreting them.[77] Sticklers about not supplanting our wisdom for that of the Legislature. Sticklers about a constitutional design that confers the power to adjudicate but not to legislate.

■ "If the text is unambiguous, we must take the Legislature at its word."[78] Plasma Fab received notice, but it did not receive notice "as required by law," meaning BankDirect lacked statutory (and contractual) authority to cancel the policy. The 10-day stated-notice precondition to cancellation in section 651.161(b), unlike other statutes, does not allow for substantial compliance. A looser, nontextual construction may temper statutory absoluteness and lead to more congenial policy outcomes, but fair reading now and again yields unfair results. As adjudicators we must read section 651.161(b) as written—in a manner faithful to what the law actually says—"despite its imperfections."[79] BankDirect contends "the purpose of the statute was satisfied." Perhaps. But our 181 legislators—who may have had 181 different motives, reasons, and understandings—nowhere codified an agreed purpose. When decoding statutory language, we are bound by the Legislature's

**71.** *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 123 (Tex. 1999).

**72.** *Health Care Servs. Corp.*, 401 S.W.3d at 629.

**73.** 1 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 62 (4th ed. 1770).

**74.** *See* TEX. GOV'T CODE § 311.016(3); TEX. INS. CODE § 651.161(a)–(b).

**75.** TEX. INS. CODE § 651.161(a) ("An insurance premium finance company may not cancel an insurance contract ... except as provided by this section for an insured's failure to make a payment at the time and in the amount provided in the agreement.").

**76.** *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 (Tex. 2006).

**77.** *First State Bank of DeQueen*, 325 S.W.3d at 640 ("[W]hen the language of a statute is clear, it is not the judicial prerogative to go behind or around that language through the guise of construing it to reach what the parties or we might believe is a better result.") (citing *Harris Cty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 847 (Tex. 2009)).

**78.** *Sheshunoff*, 209 S.W.3d at 652 n.4; *see also Christus Health Gulf Coast v. Aetna, Inc.*, 397 S.W.3d 651, 654 (Tex. 2013).

**79.** *Stockton v. Offenbach*, 336 S.W.3d 610, 619 (Tex. 2011).

prescribed means (legislative handiwork), not its presumed intent (judicial guess-work): "We must rely on the words of the statute, rather than rewrite those words to achieve an unstated purpose." [80]

Accordingly, we affirm the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

Justice Guzman filed a concurring opinion.

Justice Johnson filed a dissenting opinion, in which Chief Justice Hecht joined.

Justice Guzman, concurring.

Consistent with our recent opinion in *Roccaforte v. Jefferson County*,[1] which construed a similar notice statute, an insurance premium finance company could satisfy section 651.161 of the Insurance Code though not strictly complying with all of its terms.[2] While I do not agree with the Court's conclusion that failing to "state" a ten-day post-mailing cure deadline is, in and of itself, insufficient compliance, I nevertheless concur in the Court's judgment that BankDirect did not comply with section 651.161, substantially or otherwise, because Bank Direct both stated a shortened cure deadline and prematurely cancelled the insurance policy.

Section 651.161 prohibits an insurance premium finance company from cancelling an insurance contract listed in a premium finance agreement unless the following conditions are met:

(b) The insurance premium finance company must mail to the insured a written notice that the company will cancel the insurance contract because of the insured's default in payment unless the default is cured at or before the time stated in the notice. The stated time may not be earlier than the 10th day after the date the notice is mailed.

. . . .

(d) After the time stated in the notice required by Subsection (b), the insurance premium finance company may cancel each applicable insurance contract by mailing a notice of cancellation to the insurer.[3]

BankDirect failed to comply with the statute in the following respects: (1) on November 25, BankDirect mailed to Plasma Fab a notice of intent to cancel the policy with a stated cure deadline of December 4—only nine days after notice was mailed and one day less than the statute pre-

---

**80.** *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 571 (Tex. 2014) (plurality). "By sticking to our limited role, judges do more to improve the quality of the law than they ever could by decamping from text to hunt the snark of unvoiced legislative purpose." *Id.* at 574 (Willett, J., concurring).

**1.** 341 S.W.3d 919 (Tex. 2011).

**2.** *Compare Roccaforte*, 341 S.W.3d at 926-27 (holding hand-delivered notice substantially complied with statute requiring written notice to be "delivered by certified or registered mail") (citing Tex. Loc. Gov't Code § 89.0041(b)) *with* Tex. Ins. Code § 651.161(b), (c) (requiring the insurance premium finance company to "mail" written no-

tice to the insured and insurance agent or broker). The Court attempts to distinguish *Roccaforte* by noting "*Roccaforte* concerned the *manner* of timely notice, not the *mandate*" and concluding Roccaforte "went beyond what the statute required" by hand-delivering notice. *Ante* at 82. But when an act differs from what the statute requires, going "beyond" the statute equates to *not strictly complying with it.* The Court identifies no textual distinction between the statute in *Roccaforte* and section 651.161 of the Insurance Code that explains how substantial compliance could be sufficient in *Roccaforte* while it could never be sufficient under section 651.161.

**3.** Tex. Ins. Code § 651.161(b), (d).

scribes; and (2) BankDirect sent notice of cancellation to the insurer Scottsdale Insurance Company *on* December 4—the same date as the cure deadline stated in the notice—not "*after* the time stated in the notice." [4] Accordingly, BankDirect had no authority to cancel the insurance contract unless both shortening the stated cure deadline by a day and mailing the cancellation notice to the insurer on the stated cure deadline date substantially complies with the statute.

Analogous authority considering filing deadlines leads me to conclude that BankDirect did not comply, substantially or otherwise, with the statute. In *Edwards Aquifer Authority v. Chemical Lime, Ltd.*, we considered whether Chemical Lime substantially complied with a permit application process when it complied with all the statutory requirements except a filing deadline.[5] We "assume[d]" that the statute permitted substantial compliance and that "substantial compliance with a statute means compliance with its essential requirements." [6] But we concluded that the Legislature's "intent that applicants *strictly* adhere to the deadline is [ ] fairly clear," based on the statute's fixed filing deadlines and the absence of an extension provision.[7] Accordingly, we held Chemical Lime's late filing did not substantially comply with the statute's permitting requirements because "[a] deadline is not something one can substantially comply with. A miss is as good as a mile.... 'A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.' " [8] The reasoning: " 'If 1-day late filings are

acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline.' " [9]

Though undercutting a cure period is different than exceeding a deadline, the concepts are logically analogous. The importance of delaying cancellation until after the stated cure deadline passes is clear—it provides an insured with a date certain by which a default can be cured without cancellation of the insurance policy. The date after which an insurance premium finance company may mail a cancellation notice to the insurer, pursuant to section 651.161(d), is especially noteworthy because, as the dissent correctly recognizes, the actual number of days to cure between the insured receiving a section 651.161(b) notice of intent to cancel and the stated cure deadline is imprecise:

> Section 651.161(b) does not require that the borrower *receive* at least ten days notice before cancellation may occur; it requires that the specified date for payment not be less than ten days after the notice is *mailed*. Because the borrower will actually receive less than ten days notice of the specified date—in some cases several days less, depending on how long it takes the mail to reach the borrower—there is no hard and fast minimum notice time requirement provided to the borrower.[10]

While I agree with this description of subsection (b)'s effect, subsections (b) and (d) *together* create a firm deadline; an insurance premium finance company must wait

---

**4.** *Id.* § 651.161(d) (emphasis added).

**5.** 291 S.W.3d 392, 402-05 (Tex. 2009).

**6.** *Id.* at 402-03.

**7.** *Id.* at 403-04 (emphasis added).

**8.** *Id.* at 403, 405 (quoting *U.S. v. Locke*, 471 U.S. 84, 101, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985)).

**9.** *Id.* (quoting *Locke*, 471 U.S. at 101, 105 S.Ct. 1785).

**10.** *Post* at 95.

until "after" the "stated" cure deadline passes before sending the cancellation notice to the insurer. When a statute provides an essential, specific, and clear time restriction, as it does here, a party must adhere to that requirement.

The Court, meanwhile, focuses primarily on the notice's "stated" cure deadline, concluding the notice must always state a deadline providing at least ten days for the cure period, regardless of how much time the insured actually had to cure and without regard to when the section 651.161(d) cancellation notice was actually mailed.[11] I do not agree that "stating" a ten-day deadline is essential [12] or that *actually* giving the insured more than ten days to cure before sending the cancellation notice would not substantially comply with section 651.161. In my view, such a position would be inconsistent with *Roccaforte*.[13] But here BankDirect both stated a cure deadline "earlier than the 10th day after the date the notice [was] mailed" and mailed the cancellation notice to the insurer on the *same* day stated in the notice instead of waiting until "[a]*fter* the time stated in the notice." [14] I therefore conclude BankDirect did not comply with section 651.161, because Plasma Fab did not actually receive the minimal cure period the statute requires. Accordingly, I respectfully concur in the Court's judgment.

Justice Johnson, joined by Chief Justice Hecht, dissenting.

I do not disagree with the Court's conclusion that Insurance Code section 651.161 requires an insurance premium finance company to cancel an insurance policy in accordance with the statute's requirements. TEX. INS. CODE § 651.161(a). It is clear that the statute requires such a company to mail a written notice to the insured explaining that the company will cancel the insured's policy as a result of default unless the default is cured at or before the time stated in the notice. *Id.* § 651.161(b). The statute further requires that the stated time "may not be earlier than the 10th day after the date the notice is mailed." *Id.*

However, the Court stops its analysis without considering the statute's lack of consequences for noncompliance with the requirement set out in the last sentence of section 651.161(b) regarding the time for a finance company to mail the notice. The Court says that "BankDirect failed to meet the law's unambiguous requirements, and the Legislature enacted an austere consequence for noncompliance: BankDirect 'may not cancel' the policy." *Ante* at 86. But that approach short-circuits all the steps in a statutory analysis. We are required to look at the factors and language in the Code Construction Act and our decisions regarding statutory language for assistance in determining the effect of noncompliance with the "10th day" language. As explained below, consideration of these factors and our prior cases indicate that section 651.161(b)'s ten-day requirement should be measured by substantial compliance in order to effectuate the Legislature's intent. And measured by that standard, BankDirect complied with the statutory requirements.

---

11. *Ante* at 80.

12. *See Chem. Lime*, 291 S.W.3d at 404 ("Had Chemical Lime filed an incomplete or inaccurate application, its argument for substantial compliance would be stronger.").

13. *Roccaforte v. Jefferson Cty.*, 341 S.W.3d 919, 926-27 (Tex. 2011) (fulfilling essential purpose of the notice statute in a different way than provided substantially complies with the requirements of the statute).

14. TEX. INS. CODE § 651.161(b), (d) (emphasis added).

I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

## I. The Law

Our primary objective in construing section 651.161(b)—as it is with any statute—is to determine and give effect to the Legislature's intent, which, if possible, we ascertain from the plain meaning of the words in the statute. *E.g., Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015); *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011) ("The plain meaning of the text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results."). We presume the Legislature deliberately and purposefully selected the words and phrases it enacted, as well as deliberately and purposefully omitted words and phrases it did not enact. *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438 (Tex. 2016) (citing *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 452 (Tex. 2012)).

The Code Construction Act (Act) provides guidance regarding some of the words and phrases used in statutes. *See* TEX. GOV'T CODE § 311.003. Particularly, the Legislature specified its intent as to the meaning of certain words that are used in section 651.161:

> The following constructions apply unless the context in which the word or phrase appears necessarily requires a different construction or unless a different construction is expressly provided by statute:
>
> (1) "May" creates discretionary authority or grants permission or a power.
>
> (2) "Shall" imposes a duty.
>
> (3) "Must" creates or recognizes a condition precedent.
>
> . . . .
>
> (5) "May not" imposes a prohibition and is synonymous with "shall not."

*Id.* § 311.016. The Act likewise provides that the Legislature intends for statutes to have a just and reasonable result. *Id.* § 311.021(3). In construing statutes, courts may consider, among other matters, the object sought to be obtained and the consequences of a particular construction. *Id.* § 311.023(1), (5).

## II. Discussion

The language in the power of attorney conditioned BankDirect's authority to cancel the policy upon the occurrence of two events: (1) Plasma Fab's default and (2) BankDirect's mailing of "proper notice . . . as required by law." Unless both of these events occurred, BankDirect did not have authority under the power of attorney to cancel Plasma Fab's insurance policy. There is no question that the first condition was satisfied by Plasma Fab's failure to timely make its November payment. The dispute is whether BankDirect mailed proper notice "as required by law," satisfying the second condition, before it instructed Scottsdale to cancel the policy.

BankDirect does not dispute that use of the phrase "may not" in Insurance Code section 651.161(a) prohibited it from cancelling the Scottsdale policy for a delinquent payment unless, as relevant to the question before us, it complied with the requirements of section 651.161(b) in sending notice of its intent to cancel. TEX. GOV'T CODE § 311.016(5) (" 'May not' imposes a prohibition . . . ."); TEX. INS. CODE § 651.161(a) ("An insurance premium finance company may not cancel an insurance contract listed in a premium finance agreement except as provided by this section . . . ."). Nor does it dispute that section 651.161(b) required it to mail Plasma Fab

a written notice complying with the provision's requirements as a condition precedent to its having the right to cancel the policy. *See* TEX. GOV'T CODE § 311.016(3) ("'Must' creates or recognizes a condition precedent."); TEX. INS. CODE § 651.161(b) ("The insurance premium finance company must mail to the insured a written notice....."). Section 651.161(b) prohibits stating in the notice that the due date for the delinquent payment is earlier than the tenth day after the notice was mailed. *See* TEX. GOV'T CODE § 311.016(5) ("'May not' imposes a prohibition...."); TEX. INS. CODE § 651.161(b) ("The stated time may not be earlier than the 10th day after the date the notice is mailed."); and it is undisputed that BankDirect did not strictly comply with the requirements of section 651.161(b) because it mailed a notice specifying a date for payment that was less than ten days after the notice was mailed.

Based on the cancellation date specified in the notice, BankDirect mailed the notice of intent to cancel one day later than it was required to under the statute. Or, said another way, its notice specified that the date before which Plasma Fab must make its delinquent payment was less than "the 10th day after the date the notice [was] mailed." *Id.* § 651.161(b). One day is as close to complying with the statute as BankDirect could get, yet still not strictly comply with it. If substantial compliance is what the statute requires, then BankDirect complied with the statute.

The Court says we have explained "substantial compliance with a statute means compliance with its essential requirements." *Ante* at 88 (quoting *Edwards Aquifer Auth. v. Chem. Lime, Ltd.*, 291 S.W.3d 392, 403 (Tex. 2009)). Not to put too fine a point on the matter, but in *Chemical Lime* we did not "explain" what substantial compliance means, but only assumed its meaning because the parties

agreed on that definition and it was included in the jury charge. *Id.* at 403. That aside, I do not disagree with the definition the Court uses; it echoes the definition used by several courts of appeals: substantial compliance with a statute is where compliance with a statute's *essential* requirements has taken place, even though literal and exact compliance with its *every* requirement has not. *See, e.g., Carter v. Harris Cty. Appraisal Dist.*, 409 S.W.3d 26, 32 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("'Substantial compliance' means that one has performed the 'essential requirements' of a statute and it 'excuse[s] those deviations from the performance required by statute which do not seriously hinder the legislature's purpose in imposing the requirement.'" (quoting *U. Lawrence Boze' & Assocs., P.C. v. Harris Cty. Appraisal Dist.*, 368 S.W.3d 17, 27 (Tex. App.—Houston [1st Dist.] 2011, no pet.))); *City of Beaumont v. Spivey*, 1 S.W.3d 385, 391 (Tex. App.—Beaumont 1999, pet. denied); *Santos v. Guerra*, 570 S.W.2d 437, 440 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.). However, "substantial compliance" is not a buzzword for courts to substantively, by opinion, amend statutes. *E.g., Goldman v. Torres*, 161 Tex. 437, 341 S.W.2d 154, 158 (1960) ("[T]his court cannot, under the guise of liberal construction, usurp the power of the legislature by reading into the Act a provision that is not there.").

In determining the effect of a failure to comply with every requirement of a statute and whether substantial compliance will suffice, we have looked to whether the statute is mandatory or directory. *See, e.g., Chem. Lime*, 291 S.W.3d at 404–05; *City of Desoto v. White*, 288 S.W.3d 389, 395–96 (Tex. 2009); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493–94 (Tex. 2001). And in determining whether the Legislature intended a statute's requirements to be mandatory or directory, we "consider the plain

meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction." *Wilkins*, 47 S.W.3d at 494. If a statute is silent regarding the penalty for noncompliance, we look to the purpose of the statute for guidance. *See Chem. Lime*, 291 S.W.3d at 404; *Hines v. Hash*, 843 S.W.2d 464, 468 (Tex. 1992). A statute is generally considered directory if it requires an act to be done within a certain amount of time and fails to state the consequences for noncompliance. *Chisholm v. Bewley Mills*, 155 Tex. 400, 287 S.W.2d 943, 945 (1956); *see also Thomas v. Groebl*, 147 Tex. 70, 212 S.W.2d 625, 630–31 (1948).

Section 651.161(b) provides that the "stated time may not be earlier than the 10th day after the date the notice is mailed," but does not specify consequences or a penalty for a failure to comply with this provision. TEX. INS. CODE § 651.161(b). The term "may not" imposes a prohibition and is to be interpreted as synonymous with "shall not" unless the context in which the phrase appears necessarily requires a different construction or if a different construction is expressly provided for by statute. TEX. GOV'T CODE § 311.016. "Shall" generally imposes a duty. *Id.* § 311.016(2). By providing that a premium finance company may not cancel an insurance policy except as provided by the statute and requiring that the stated time of cancellation may not be earlier than the tenth day after the date the notice is mailed, the Legislature seemingly imposed a mandatory duty on premium finance companies to carry out these specific requirements. However, this Court has instructed that although statutory language may appear to impose a mandatory duty, the language may yet be directory when such an interpretation is most consistent with the Legislature's intent. *See Wilkins*, 47 S.W.3d at 493; *see*

*also Lewis v. Jacksonville Bldg. & Loan Ass'n*, 540 S.W.2d 307, 310 (Tex. 1976) ("Provisions which do not go to the essence of the act to be performed, but which are for the purpose of promoting the proper, orderly, and prompt conduct of business, are not ordinarily regarded as mandatory."). Because section 651.161(b) lacks a penalty for noncompliance with its terms, we must "consider the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction" in determining whether the time requirement in section 651.161(b) is mandatory or directory. *Wilkins*, 47 S.W.3d at 494.

An example of the foregoing is *Hines v. Hash*, where we focused on statutory language similar to that at issue in this case. 843 S.W.2d 464 (Tex. 1992). In *Hines*, the statute provided that as a prerequisite to filing a suit for damages under the Texas Deceptive Trade Practices Act, "a consumer shall give written notice to the person at least 30 days before filing the suit advising the person of the consumer's specific complaint and the amount of actual damages and expenses." *Id.* at 466–67 (quoting TEX. BUS. & COM. CODE § 17.50A[1]). Because the statute was silent on the consequences for failing to comply, this Court looked to its purpose for guidance and concluded that if a plaintiff files an action under the DTPA without first giving the required notice, and a defendant requests abatement, the trial court must abate the proceedings. *Id.* at 469. Although the notice requirement was clearly mandatory, that feature alone did not determine the consequences for failure to comply with it. *Id.* at 467. Because the statute was silent as to the consequences of non-compliance, the purpose of the statute favored the consequence of

---

[1]. The current version of this statute is Texas Business and Commerce Code § 17.505(a).

abating the case to allow the plaintiff time to comply with the notice requirement rather than dismissing the action altogether. *Id.* at 469.

Section 651.161(b) likewise does not specify consequences for noncompliance with its ten-day requirement, so we must look beyond its plain language for assistance. In that regard, we look to see if the Code Construction Act gives guidance. And it does. There, the Legislature clarifies that in enacting statutes it intends: (1) a just and reasonable result, (2) that fulfills the object to be obtained, (3) in light of the consequences of how the language is construed. *See* TEX. GOV'T CODE §§ 311.021(3), 311.023(1), (5).

As to the just and reasonable result and consequences factors, we look at the consequences of construing section 651.161(b) to require strict compliance, as well as the consequences of construing it to require substantial compliance. If strict compliance is the standard, then a lender, such as BankDirect, that mails a notice of intent to cancel one day late may end up being liable for damages from an occurrence or loss that would have been covered by the cancelled insurance except for the occurrence or loss happening days, as in this case, or weeks or months after the insurance was cancelled. This result could follow even though, as in this case, Plasma Fab's policy was cancelled because Plasma Fab (1) failed to make payment when and as it agreed; (2) was reminded of its delinquency by the premium finance company, yet did not make payment; (3) was given notice that its insurance would be cancelled on a specific date if the payment was not made, and yet still failed to make payment; and (4) received notice that the lender directed the insurance to be cancelled as of the specific date earlier specified—albeit the date was one day less than prescribed by statute. Such a result could,

in substance, turn premium finance lenders into post-cancellation insurers of their borrowers despite the borrowers having lost coverage because they failed to pay loan installments as agreed, or by timely curing their default after written notice that failure to pay was jeopardizing the very insurance the loan allowed them to purchase. It is difficult to view such consequences to either the borrower or the lender as just and reasonable. But if substantial compliance is the standard and, as BankDirect posits, the notice of cancellation is not effective until the earliest day contemplated by the statute, then a borrower receives all of the benefits and protections of section 651.161(b) while a premium lender, such as BankDirect, is held to the requirements the Legislature built into the statute to protect borrowers. Thus, construing section 651.161(b) as requiring substantial compliance such that the lender's cancellation of the borrower's insurance is effective no earlier than the earliest date permitted by the statute comports with the Legislature's intent that section 651.161(b) yields results and consequences that are just and reasonable.

Looking next to the legislative object to be obtained, *see* TEX. GOV'T CODE § 311.023(1), it cannot be doubted that the Legislature intended to protect insureds by circumscribing the practices of premium lenders. Nor can it be doubted that the Legislature also intended to allow lenders to protect themselves when borrowers do not pay as agreed by permitting them to cancel the policy purchased with the loan proceeds and receive the unearned premium to be applied to the borrower's remaining balance on the loan. *See* TEX. INS. CODE § 651.162; *see also Serv. Fin. v. Adriatic Ins. Co.*, 46 S.W.3d 436, 447 (Tex. App.— Waco 2001), *judgm't vacated w.r.m.*, 51 S.W.3d 450 (Tex. App.—Waco 2001, no pet.) (noting that the Insurance Code clearly evinces an intent to protect the

premium finance industry). The object to be obtained—striking a balance between protecting the rights of both borrowers and premium finance lenders—is also apparent from the language in section 651.161(b). That section provides for an insured who finances premiums to have a reasonable amount of advance notice that its insurance policy will be cancelled if delinquent payments are not made, as well as being advised of a specific date before which the insured can make a delinquent payment and be assured that its insurance will remain in force. The statutory requirement that the specific date must be included in a lender's notice of intent to cancel links the notice's time requirement to the lender's action in mailing the notice instead of the borrower's receipt of the notice. Thus, section 651.161(b) does not provide for the borrower to have a fixed amount of time after receiving the notice to cure its payment default and avoid cancellation of the insurance.

Because the Legislature did not specify the consequences of a premium finance company failing to strictly comply with section 651.161(b)'s ten-day requirement, and the factors and language in the Code Construction Act indicate, on balance, that the requirement should be measured by substantial compliance, I conclude that the Legislature did not intend to require strict compliance with that specific provision in the statute. I further conclude that the object of section 651.161(b)'s ten-day requirement will be fulfilled so long as an insured has at least until the tenth day after the lender mails the notice of intent to cancel to make the payment. I would hold that if the date specified for cancellation in the notice is before the tenth day after the notice is mailed, then the time for the borrower to make its delinquent payment and maintain its insurance in force is extended to the tenth day after the notice is mailed or the date specified in the notice of intent to cancel, whichever is later.

The Court cites thirteen statutes in which the Legislature has expressly provided that substantial compliance with statutory terms is sufficient. First, it is worth noting that only two of the statutes mention a time requirement. *See* Tex. Elec. Code § 18.065(a) (allowing for Secretary of State to monitor voting registrars' substantial compliance with various sections, one of which is a hard deadline of November 30 rather than a "not later than" time frame); *see also* Tex. Ins. Code § 826.105 (allowing substantial compliance with notice requirements of the chapter, including filing an organizational conversion plan "[n]ot later than the 30th day" after members approve the plan under Insurance Code section 826.104). Second, and more importantly, this Court has repeatedly held that if the statute at issue does not provide consequences for failure to strictly comply with its terms, we look to "the plain meaning of the words used, as well as the entire act, its nature and object, and the consequences that would follow from each construction." *Wilkins*, 47 S.W.3d at 494; *see also AHF–Arbors at Huntsville I, LLC v. Walker Cty. Appraisal Dist.*, 410 S.W.3d 831, 835–36 (Tex. 2012); *City of Desoto*, 288 S.W.3d at 397; *Hines*, 843 S.W.2d at 469 (noting that the consequence of noncompliance may be limited to enforcement of the purpose of the notice); *Chisholm*, 287 S.W.2d at 945; *Thomas*, 212 S.W.2d at 629–30. If BankDirect had failed to mail a notice of intent to cancel to Plasma Fab, there would be no question that BankDirect failed to strictly comply with section 651.161's cancellation requirements, because mailing of the notice is undoubtedly an essential statutory requirement that must be strictly complied with. On the other hand, the ten-day time requirement in section 651.161(b) is not essential, meaning that substantial compli-

ance with that provision will suffice because substantial compliance will not seriously hinder the Legislature's purpose in imposing the requirement—that the borrower is given notice of a specific cancellation date.

It is worth noting that both the Court and the concurrence discuss *Chemical Lime* for the proposition that "[a] deadline is not something one can substantially comply with." *Ante* at 88 (quoting *Chem. Lime*, 291 S.W.3d at 403). I agree. However, in *Chemical Lime*, the deadline was "a specific, calendar date by which permit applications were required to be filed." *Id.* There is no doubt that one cannot substantially comply with a specific, calendar date. Performance on any date other than that specific, calendar date would be "a miss as good as a mile." *Id.* Here, by contrast, the deadline was "not earlier than the 10th day after the date the notice is mailed." Tex. Ins. Code § 651.161(b). Substantial compliance is possible under the structure of this statute which provides for a number of days—such as section 651.161(b)'s ten-day time period—rather than one, and only one, specific, calendar date. Section 651.161(b) does not require that the borrower *receive* at least ten days notice before cancellation may occur; it requires that the specified date for payment not be less than ten days after the notice is *mailed.* Because the borrower will actually receive less than ten days notice of the specified date—in some cases several days less, depending on how long it takes the mail to reach the borrower—there is no hard and fast minimum notice time requirement provided to the borrower. As long as an insured has at least until the tenth day after the date of mailing to cure his or her default, there has been substantial compliance with the statute's ten-day time period.

Applying the foregoing in this case, Plasma Fab could have made its delinquent payment at any time on or before the tenth day after BankDirect mailed the notice of intent to cancel the policy. If it had done so, BankDirect would have lacked authority under the power of attorney to cancel the policy. BankDirect did not receive Plasma Fab's payment until December 9, 2008, which was unquestionably beyond the tenth day following the date BankDirect mailed the notice. BankDirect's notice of intent to cancel the policy was in substantial compliance with the statute, and in my view it mailed "proper notice . . . as required by law."

### III.   Conclusion

BankDirect substantially complied with section 651.161(b)'s requirements in giving notice to Plasma Fab and in cancelling the insurance policy. Accordingly, I would hold that BankDirect did not exceed its authority under the power of attorney granted to it by Plasma Fab when it cancelled the policy.

I would reverse the judgment of the court of appeals as to BankDirect and reinstate the judgment of the trial court.

Because the Court does not do so, I respectfully dissent.