JAMES C. HO, Circuit Judge, concurring:
I write separately to respond to Judge Duncan's concurring opinion.
The court today certifies certain issues to the Supreme Court of Texas to determine at what moment in time courts should identify the "unpaid commission due," and therefore subject to treble damages, under TEX. BUS. & COM. CODE § 54.004. Judge Duncan agrees with the decision to certify. But he writes separately because he also concludes that the text of the provisions in question makes the decision straightforward for the Supreme Court of Texas.
Judge Duncan and I emphatically agree that the proper function of the judiciary is to construe statutory texts faithfully and according to their plain meaning - to say what the law is, not what we may personally think the law should be. We nevertheless reach different conclusions as to the particular text before us, as textualists sometimes do. He concludes that the provisions in question allow only one permissible *960 interpretation. By contrast, I conclude that the provisions before us are capable of competing plausible interpretations among reasonable jurists of good faith. And it is for that reason that I concur in the decision to certify issues to the Supreme Court of Texas.
I.
Judge Duncan is plainly correct that § 54.002 and § 54.003 fix the time at which a principal may become liable for a sales commission. But the dispute in this case concerns damages, not liability. And it is not clear to me what exactly in these liability provisions speaks to the timing that courts must use to determine damages under § 54.004. The liability and damages provisions perform distinct functions, and I do not see what in the text of the former sheds light on the interpretative question before us concerning the latter.
Judge Duncan theorizes that § 54.004's reference to § 54.002 and § 54.003 requires courts to calculate the amount of any "unpaid commission due" at the time of violation - and not at the time of suit, or judgment, or some other moment. See TEX. BUS. & COM. CODE § 54.002(a)(2) (requiring written contracts to "state the method by which the sales representative's commission is to be computed and paid"); id. § 54.003 (providing that, for agreements that do not comply with § 54.002, "the principal shall pay all commissions due the sales representative not later than the 30th working day after the date of the termination").
But there is nothing in § 54.002 and § 54.003 that compels courts to treble what is due at time of violation. If there were, we might expect, for example, that altering the text of § 54.004 would create problems. Either the statute would point in different directions, or we would have concerns about surplusage. But that is not true here. Suppose the Legislature had specified in § 54.004 that courts should impose treble damages based on any "unpaid commission due at the time the civil action is filed." Such language would not create any conflict or tension with anything in § 54.002 or § 54.003. Or suppose the Legislature had made explicit what Judge Duncan submits is implicit, and specified in § 54.004 that courts should treble any "unpaid commission due but unpaid by the deadline specified in § 54.002 or § 54.003." This too would create no conflict or tension or surplusage with the language of § 54.002 and § 54.003.
So it would appear that nothing in the text of § 54.002 and § 54.003 forecloses or demands the application of § 54.004 at any particular time.
II.
There are additional reasons why I am not prepared at this time to embrace the interpretation offered by the concurring opinion.
In other contexts, courts typically do not treat damages as fixed at the moment of liability, but instead recognize that damages can increase or decrease over time. Contract damages can decrease if opportunities to mitigate subsequently arise, and tort damages can decrease if the extent of injury is not what it seemed at the time of liability. See, e.g., Pulaski Bank & Tr. Co. v. Texas Am. Bank, 759 S.W.2d 723, 736 (Tex. App. - Dallas 1988, writ denied) (diminishing damages award by the amount attributed to a failure to mitigate); RESTATEMENT (SECOND) OF TORTS § 910 cmt. b (AM. LAW INST. 1979) ("[A]n event that indicates that the conduct is less harmful than had been supposed prevents or diminishes damages for the consequences.").
Similarly, tort damages can increase if a personal injury worsens. See, e.g., J. Weingarten, Inc. v. Carlisle, 172 S.W.2d 170, *961 174 (Tex. Civ. App. - Galveston 1943, writ ref'd w.o.m.) (defendant liable not only for initial injury but resulting infection); 28 TEX. JUR. 3D DAMAGES § 115 ("[A] plaintiff may recover for all damages suffered up to the time of the trial and for those that are shown as reasonably and probably certain to be suffered in the future.") (emphasis added); RESTATEMENT (SECOND) OF TORTS § 910 cmts. b, c ("Any event occurring prior to the trial that increases the harmful consequences of the defendant's tortious conduct, if it is an event for the consequences of which the defendant is responsible, increases the damages recoverable to the same extent, whether the event has occurred before suit is brought or after suit.").
So a Texas court might reasonably conclude that, absent statutory text to the contrary, the Legislature would expect courts to construe and apply the damages provision of § 54.004 in a similarly dynamic fashion - rather than freeze the damages analysis at the time of the violation.
In addition, the Texas Legislature has directed courts to consider the consequences of a proposed statutory interpretation. So suppose, for example, that a principal owed a $1 million commission, and paid one day late, plus interest. Under this hypothetical, the agent does not suffer any "actual damages." Yet the agent would nevertheless be entitled to a $2 million windfall. If the plain meaning of the statutory text were clear, that would be one thing. See, e.g., BankDirect Capital Fin., LLC v. Plasma Fab, LLC, 519 S.W.3d 76, 85 (Tex. 2017) ("Statutes that impose timelines naturally burden those who miss them."). But the provision before us is not so clear, to me anyway. A Texas court, in the face of an ambiguous statute, might conclude that the "consequences of a particular construction" make it less plausible than the alternative. TEX. GOV'T CODE § 311.023(5).
Finally, Texas courts might also consider how best to construe § 54.004 in light of TEX. CIV. PRAC. & REM. CODE § 41.004(a), which provides that "exemplary damages may be awarded only if damages other than nominal damages are awarded."
* * *
If this were a federal statute, then it would fall upon us to decide which among competing plausible interpretations is the correct one. But this case involves a Texas statute - one that is capable of multiple plausible constructions, and affects countless individuals and businesses across the state. Accordingly, the court has decided to certify these issues to the only court that can speak with authority for all Texans, in state and federal court alike. Certification will have the additional benefit of giving counsel the opportunity to address the issues identified in these two concurring opinions, but not examined by either party in this case to date.
I do not presume to know how Texas courts would ultimately resolve these contested issues of statutory interpretation. And I do not intend anything in this opinion to signal any personal view as to how Texas courts ought to decide these matters. My point is precisely the opposite: Under our system of federalism, it is for Texas courts to decide unsettled questions of Texas law. I concur in the decision to certify these issues to the Supreme Court of Texas.