# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00332-CV

## In re Commitment of Aaron Gipson

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT
### NO. D-1-GN-17-002714, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## O P I N I O N

The State of Texas appeals from the trial court's final judgment based on a non-unanimous jury verdict determining that Aaron Gipson is not a sexually violent predator (SVP). *See* Tex. Health & Safety Code § 841.062(a) (providing that judge or jury shall determine whether person is SVP and providing for appeal from determination). The State raises two issues on appeal. First, the State argues that because the Texas Health and Safety Code requires a jury verdict to be unanimous when the jury "determin[es] that the person is a sexually violent predator," *see id.* § 841.062(b), the verdict must also be unanimous when the jury determines that a person is not an SVP. Second, the State asserts the trial court erred in sustaining an "improper impeachment" objection when the State's counsel asked Gipson on direct examination at trial if he had asserted his Fifth Amendment privilege during his deposition, thereby excluding evidence of Gipson's previous Fifth Amendment invocations. Because we conclude that the State's statutory construction and evidentiary arguments are unavailing, we affirm the trial court's final judgment.

# I. LEGAL AND FACTUAL BACKGROUND

This appeal arises out of a civil commitment proceeding to determine whether Gipson is an SVP. *See* The Civil Commitment of Sexually Violent Predators Act, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143–52 (codified as amended at Tex. Health & Safety Code §§ 841.001–.153) (the SVP Act). In enacting the SVP Act, the legislature found:

> that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. . . . Thus, the legislature finds that civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

Tex. Health & Safety Code § 841.001; *see In re Commitment of Fisher*, 164 S.W.3d 637, 639–40 (Tex. 2005). An SVP is defined as a "repeat sexually violent offender" who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code § 841.003(a). The State bears the burden of proving "beyond a reasonable doubt" that a person is an SVP. *Id.* § 841.062(a). The SVP Act also sets forth the procedures and requirements for determining whether a person is an SVP that should be civilly committed for long-term supervision and treatment. *See generally id.* §§ 841.002–.153.

Here, the State filed an SVP civil commitment petition against Gipson, who was close to completing eighteen years of sentence time for his convictions for aggravated sexual assault of a child, sexual assault, and failure to comply with sex offender registration. *See id.* § 841.041 (setting forth requirements for petition). Both parties demanded a jury trial, and a four day jury trial occurred in March 2018. *See id.* § 84.061(b) (providing for "jury trial on demand"). On behalf of

the State, two doctors testified as expert witnesses and Gipson testified as a fact witness. Gipson also testified on his own behalf, along with his sister and mother.

During the State's direct examination of Gipson, the following exchange occurred, and the accompanying evidentiary objection is at issue on appeal:

Q. [State's counsel] You would sexually assault [your daughter] before her daycare?

A. [Gipson] I wasn't in her life when she was in a daycare.

Q. Is it true, when you talked to us before, you pled the Fifth during your deposition?

A. I never confessed to touching my child, my daughter.

Q. But you pled the Fifth when we talked about this in your deposition?

[Gipson's counsel]: Objection. That's improper impeachment.

THE COURT: Ask the question again.

[State's counsel]: I asked if he pled the Fifth about this offense when he talked about this before, Your Honor.

THE COURT: I'm going to sustain the objection. Move on.

The other issue raised on appeal concerns the jury charge. Gipson submitted a proposed jury charge that included the following instruction:

A "yes" answer [to whether Gipson is an SVP] must be unanimous; that means that all 12 of the jurors must agree to a "yes" answer. A "no" answer may be made if 10 jurors agree to it.

Although the SVP Act dictates that "[a] jury determination that the person is a sexually violent predator must be by unanimous verdict," *id.* § 841.062(b), it also states that the Texas Rules of Civil Procedure apply to civil commitment proceedings unless they conflict with the SVP Act:

> Except as otherwise provided by this subsection, a civil commitment proceeding is subject to the rules of procedure and appeal for civil cases. To the extent of any conflict between this chapter and the rules of procedure and appeal for civil cases, this chapter controls.

*Id.* § 841.146(b). With respect to the rules of civil procedure governing a jury verdict, Rule 292(a) states: "[A] verdict may be rendered in any cause by the concurrence, as to each and all answers made, of the same ten or more members of an original jury of twelve." Tex. R. Civ. P. 292(a). Gipson's proposed jury charge applied section 841.062(b)'s unanimity requirement to a "yes" answer and Rule 292(a)'s ten or more jury member concurrence requirement to a "no" answer.

At the jury charge conference following the State's case in chief, the State objected to the instruction that permitted a non-unanimous "no" answer, arguing that the legislature was "clearly contemplating a unanimous verdict" and that having "a criminal burden for a 'yes' but a civil burden for a 'no' is confusing, and I doubt that would be the intention of the legislature at the time of creating it." Moreover, the State argued that trial courts "have just granted the 12 unanimous" and "[t]here is no case law on point." Gipson responded first that the statute only addresses a "yes" answer, not a "no" answer, and it is presumed that the legislature includes or excludes words for a purpose; and second that even if the legislature "might not have intended" the result, "it is the result that is required by the reading of the law until the time they elect to change it." The trial judge noted that he had done both ways in previous trials; he had also "looked for what

4

I could -- anything I could law-wise, and there wasn't a lot of guidance"; and he concluded that applying Rule 292(a) to a "no" answer was the "right way to go," thereby overruling the State's objection.

At the close of trial, the State reurged its objection to the jury instruction permitting a non-unanimous "no" answer, which the trial court again denied. The court then instructed the jury that a "no" answer to the SVP question "means that at least 10 jurors agree the answer to the question is 'no,'" but a "yes" answer "must be unanimous" and that "means all 12 jurors must agree the answer to the question is 'yes.'" The jury returned a verdict signed by ten of the twelve jurors with a "no" answer to the question of whether they found beyond a reasonable doubt that Gipson is an SVP. The trial court rendered final judgment on the verdict in favor of Gipson.

The State moved for a new trial, arguing that the trial court "rejected language from the [State's] proposed jury charge that required the jury to render a yes or no verdict unanimously" and instead provided an instruction permitting a non-unanimous verdict in favor of Gipson. The trial court denied the motion for new trial, and in an addendum to the order, stated:

> Sec. 841.062(b), Texas Health and Safety Code states that "A jury determination that the person is a sexually violent predator must be by unanimous verdict." No mention whatsoever is made concerning a negative verdict. Sec. 841.146(b) states that 'Except as otherwise provided by this subsection, a civil commitment proceeding is subject to the rules of procedure and appeal for civil cases.["] Rule 292, Texas Rules of Civil Procedure allows for a 10-2 verdict. The legislature established a hybrid criminal/civil procedure for this type of case. This interpretation creates no conflict in the law and is reasonable.

This appeal followed. *See* Tex. Health & Safety Code § 841.062(a) (providing for appeal).

5

## II. DISCUSSION

### A. Statutory Construction

In its first issue, the State claims the trial court erred by instructing the jury that a "no" answer requires only ten members to agree and entering final judgment on a non-unanimous jury verdict. "We review a trial court's decision to submit or refuse to submit a particular jury instruction for an abuse of discretion." *City of Austin v. Chandler*, 428 S.W.3d 398, 413 (Tex. App.—Austin 2014, no pet.) (citing *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000)). But because a trial court has no discretion to misstate the law, we review de novo whether an instruction in a jury charge misstates the law based on improper statutory construction. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002). When interpreting a statute to determine what the law is, our primary objective is to give effect to the legislature's intent, and "the Legislature expresses its intent by the words it enacts and declares to be the law." *Bosque Disposal Sys., LLC v. Parker Cty. Appraisal Dist.*, 555 S.W.3d 92, 94 (Tex. 2018) (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011)).

Here, the parties do not dispute that the plain language of the statute requires a unanimous jury verdict for an affirmative SVP determination, but they disagree as to whether a unanimous verdict is required for a negative SVP determination—i.e., a determination that a person is *not* an SVP. The State asserts that section 841.062(b) requires a unanimous answer for both; Gipson, on the other hand, asserts that although section 841.062(b) governs affirmative SVP

6

determinations, Rule 292(a) governs negative SVP determinations, permitting a negative SVP determination by the concurrence of ten or more members of the jury. *See* Tex. R. Civ. P. 292(a).[1]

The State makes three arguments. First, the State argues that "the statute is ambiguous as to the requirements for a 'no' verdict" and statutory construction aids lead to the conclusion that the proper construction requires all verdicts to be unanimous. *See* Tex. Gov't Code § 311.023 (describing statutory construction aids). Second, the State asserts that "[a]lthough the statute does not expressly address the requirements of a 'no' verdict, the unanimity requirement for a 'yes' verdict conflicts with the general civil rule concerning jury verdicts, and reveals a legislative intent that all verdicts in these cases be unanimous." Third, the State complains that to construe the statute otherwise would lead to absurd results. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) ("[W]e construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads

---

[1] As the State notes, one of our sister courts has faced the issue of whether the trial court erred in its jury instruction that a verdict must be unanimous as to either "yes" and "no" answers, but each time it declined to address the issue, concluding that if error existed, it was harmless. *See In re Commitment of Pickens*, No. 09-14-00391-CV, 2016 WL 821426, at *3 (Tex. App.—Beaumont Mar. 3, 2016, pet. denied) (mem. op.); *In re Commitment of Perez*, No. 09-15-00126-CV, 2015 WL 8470522, at *7 (Tex. App.—Beaumont Dec. 10, 2015, no pet.) (mem. op.); *In re Commitment of Hatcher*, No. 09-15-00068-CV, 2015 WL 6745399, at *3, *6 (Tex. App.—Beaumont Nov. 5, 2015, no pet.) (mem. op.). However, following the briefing to this Court, our sister court in Fort Worth expressly addressed this issue, holding that the jury should be instructed "that it may render a 'no' finding with 10 jurors' concurrence." *In re Commitment of Jones*, 571 S.W.3d 880, 891 (Tex. App.—Fort Worth 2019, pet. filed); *see In re Commitment of M.A.C.*, No. 04-18-00865-CV, 2019 WL 3208819, at *2 (Tex. App.—San Antonio July 17, 2019, no pet. h.) (mem. op.) (reviewing *Anders* brief and concluding that "the appeal is not wholly frivolous and there are arguable ground(s) for appeal, including whether the trial court erred in denying M.A.C.'s request for a jury instruction that the jury could render a verdict in M.A.C.'s favor by a vote of 10-2").

to absurd results." (citations omitted)). We consider each of the State's arguments in turn, but ultimately conclude that none of them is persuasive.

### 1. *Ambiguity*

"As always, '[w]hen construing a statute, we begin with its language.'" *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015) (quoting *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006)). The statute at issue states: "A jury determination that the person is a sexually violent predator must be by unanimous verdict." Tex. Health & Safety Code § 841.062(b). A conclusion that the SVP Act provides asymmetrical requirements for a "no" and a "yes" jury verdict would not be an aberrant statutory scheme—death penalty cases have the same asymmetrical requirements for verdicts. *See* Tex. Code Crim. Proc. art. 37.071, § 2(d)(2) (providing that "court shall charge the jury" that "it may not answer any issue submitted under Subsection (b) of this article 'yes' unless it agrees unanimously and it may not answer any issue 'no' unless 10 or more jurors agree").

At issue then is whether the statute's language is ambiguous, such that its words yield more than one reasonable interpretation—e.g., do its words reasonably address a "no" verdict such that a conflict exists between section 841.062(b) requiring unanimity for a "no" verdict and Rule 292(a) permitting a "no" answer from only ten or more jurors. *See Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 405 (Tex. 2016) ("Whether statutory language is ambiguous is a matter of law for courts to decide, and language is ambiguous only if the words yield more than one reasonable interpretation."). If the statute's words are ambiguous, we will turn to rules of construction and extrinsic statutory aids to determine the meaning of the statute and whether a conflict exists; if the statute's language is clear and unambiguous in only addressing a "yes" verdict,

not a "no" verdict, we will eschew such aids. *Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015) ("We only resort to rules of construction or extrinsic aids when a statute's words are ambiguous." (citing *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009))); *City of Rockwall*, 246 S.W.3d at 626 ("When a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language.").

The State does not specifically identify how any of the statute's words yield an alternative reasonable interpretation to construct a meaning other than that an affirmative SVP jury determination requires unanimity—in fact, the State admits that the statute does not "expressly address" a negative SVP determination. Nevertheless, the State appears to be arguing that section 841.062(b), which provides:

> [a] jury determination *that* the person is a sexually violent predator must be by unanimous verdict

should be interpreted to read:

> [a] jury determination *whether* the person is a sexually violent predator must be by unanimous verdict.

Tex. Health & Safety Code § 841.062(b) (emphasis added). But we cannot change the meaning of the statute by adding words to it or reading language into the statute that the legislature did not put there. *See City of Rockwall*, 246 S.W.3d at 631 ("[C]hanging the meaning of the statute by adding words to it, we believe, is a legislative function, not a judicial function."); *id.* at 628 ("[B]y not reading language into the statute when the legislature did not put it there, we do not risk crossing the

9

line between judicial and legislative powers of government as prescribed by article II of the Texas Constitution."); *see also BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017) (noting Texas Constitution requires judges to be "sticklers" in applying statutes—i.e., "not rewriting statutes under the guise of interpreting them" or "supplanting our wisdom for that of the Legislature"). And the term "that" has a specific plain meaning, as demonstrated by dictionary usage, distinct from the term "whether." *See Texas State Bd. of Exam'rs of Marriage & Family Therapists v. Texas Med. Ass'n*, 511 S.W.3d 28, 35 (Tex. 2017) (noting "[t]o determine a statutory term's common, ordinary meaning," courts "typically look first to their dictionary definitions"). Here, "that" is "used as a function word to introduce a subordinate clause that is a noun equivalent." *Webster's Third New Int'l Dictionary* 2367 (2002). The subordinate clause at issue in the statute that is a noun equivalent is the phrase "the person is a sexually violent predator," which does not include "the person is *not* a sexually violent predator." In contrast, "whether" is "used as a function word . . . to indicate . . . alternative conditions or possibilities." *Id.* at 2603. Thus, had the legislature used the word "whether," it would imply a determination between two alternative possibilities—i.e., whether the person is or is not an SVP. But we find no support for interpreting "that" contrary to its plain and ordinary meaning such that it would include the meaning of "whether."[2]

---

[2] The State also claims that section 841.062's title "Determination of Predator Status" must mean that when the statute "explicitly requires a unanimous verdict for commitment" it also "implicitly requires the same for non-commitment." However, the Code Construction Act expressly states that "[t]he heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." Tex. Gov't Code § 311.024. Accordingly, the State's argument fails because it is not using the title to construe the statute, but to "expand the meaning" by reading into

The legislature clearly knows how to use language encompassing both affirmative and negative jury determinations, as it has done so elsewhere. *See, e.g.*, Tex. Fam. Code § 54.03(c) ("Jury verdicts under this title must be unanimous."). We must presume that the legislature, by choosing not to do so here and by using the word "that" instead of "whether," did so purposefully. *See City of Rockwall*, 246 S.W.3d at 628 ("It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose . . . [and] we believe every word excluded from a statute must also be presumed to have been excluded for a purpose." (quoting *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981))); *see also Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000) (explaining that courts "should not presume to add" to statute when legislature has demonstrated it "clearly knew" how to add phrase in other parts of statute). Agreeing with our sister court, we therefore conclude that the section 841.062(b)'s language is not ambiguous.[3] *See In re Commitment of Jones*, 571 S.W.3d 880, 890 (Tex. App.—Fort Worth 2019, pet. filed) ("This statute unambiguously requires that the jury must be unanimous in its determination that a person *is* a sexually violent predator. But by its plain words, the statute clearly does not require that the jury be unanimous in a determination that a person *is not* a sexually violent predator.").

---

the statute an "implicit[] require[ment]." *See Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 47 n.4 (Tex. 2015) ("When the plain meaning of a statute controls, however, 'the title of the section carries no weight, as a heading "does not limit or expand the meaning of a statute."'" (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 809 (Tex. 2010))).

[3] To the extent that the State is arguing that the scope of the statute is ambiguous, not just the statutory terms, the Texas Supreme Court has expressly directed that this is an improper inquiry: "the inquiry is not whether the scope of a statute is ambiguous, but rather whether the statutory language itself is ambiguous." *Southwest Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 406 (Tex. 2016) (citing *Texas Dep't of Ins. v. American Nat'l Ins.*, 410 S.W.3d 843, 853–54 (Tex. 2011)).

Having concluded the language of section 841.062(b) is not ambiguous, we will not entertain the State's arguments relying on rules of construction or extrinsic aids. *See Greater Hous. P'ship*, 468 S.W.3d at 58; *City of Rockwall*, 246 S.W.3d at 626. Although the State relies on multiple nontextual extrinsic aids listed in the Code Construction Act, *see* Tex. Gov't Code § 311.023, the Texas Supreme Court has expressly dictated that "plain language forbids open-ended improvisation, including the nontextual purposivism and consequentialism winked at in the Code Construction Act." *BankDirect*, 519 S.W.3d at 85. Thus, "'[w]here text is clear, text is determinative,'" and "we are bound by the Legislature's prescribed means (legislative handiwork), not its presumed intent (judicial guesswork)." *Id.* at 80, 86–87 (quoting *Entergy*, 282 S.W.3d at 437). We therefore turn to whether the unambiguous statute conflicts with the rules of civil procedure.

### 2. Conflict

It is undisputed that section 841.062(b) and Rule 292(a) conflict as to an affirmative SVP jury determination, and therefore section 841.062(b)'s unanimous jury verdict requirement for an affirmative determination prevails. *See* Tex. Health & Safety Code § 841.146(b) (noting rules of civil procedure govern civil commitment proceedings, except "[t]o the extent of any conflict between this chapter and the rules of procedure and appeal for civil cases, this chapter controls"). But the State argues section 841.062(b) and Rule 292(a) conflict as to a negative SVP jury determination. We disagree.

We cannot divine a necessary reason that the number of sufficient concurring jury members for an affirmative jury verdict must be the same as for a negative jury verdict, nor has the

12

State provided us with one. Moreover, as mentioned previously, the verdict requirements in death penalty cases require a unanimous verdict for a sentence of death, while the vote of ten jurors is sufficient to return a verdict denying a sentence of death. *See* Tex. Code Crim. Proc. art. 37.071, § 2(d)(2); *cf. In re Commitment of Jones*, 571 S.W.3d at 890 (noting that legislature requires unanimity for exemplary damages awards but "only 10 jurors need to agree that exemplary damages are not warranted" (citing Tex. Civ. Prac. & Rem. Code § 41.003(d); Tex. R. Civ. P. 226(a), 292(b))). The State attempts to distinguish this example by arguing that "the Code of Criminal Procedure expressly provides for non-unanimous verdicts. Chapter 841 does not." But by expressly stating that the Texas Rules of Civil Procedure govern when there is no conflict and by addressing only affirmative jury verdicts, Chapter 841 does exactly what the State says it does not—i.e., it expressly provides for non-unanimous negative SVP jury verdicts. We therefore conclude that there is no conflict between section 841.062(b)'s requirement for unanimous jury verdict as to an affirmative SVP determination and Rule 292(a)'s allowance for the concurrence of ten or more jury members to suffice for a negative SVP determination.

### 3. *Absurdity*

Finally, the State argues that this result would lead to an absurd conclusion. The State's absurdity argument is inchoate, but its argument appears to be as follows: it is absurd to "require a unanimous verdict to civilly commit a sexually violent predator but allow the person to avoid supervision and treatment with a split jury vote" because the "public's interest is best served by a reasonable and just requirement of a unanimous jury verdict" and "[h]olding otherwise puts the concerns of the individual over the concerns of society." *See* Tex. Gov't Code § 311.021(5) (stating

13

presumption of legislature's intent in enacting statutes that public interest is favored over private interest). However, even if we were to conclude that this result favors private interest over public interest—thereby rebutting the presumption prescribed in the Code Construction Act—we fail to see how "the process and result called for by the plain language of the statute is illogical, much less absurd." *See City of Rockwall*, 246 S.W.3d at 627–28; *see also Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) ("If an as-written statute leads to patently nonsensical results, the 'absurdity doctrine' comes into play, but the bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity.").

The State appears to have drawn its absurdity argument from a case decided by the Supreme Court of Iowa, which the State claims is the only court that "has directly addressed the same issue now before this Court." *See In re Detention of Williams*, 628 N.W.2d 447, 454–55 (Iowa 2001). The Iowa SVP statute at the time of *Williams* is nearly identical to section 841.062(b) and states: "If the determination that the respondent is a sexually violent predator is made by a jury, the determination shall be by unanimous verdict of such jury." Iowa Code § 229A.7(3) (1999). In interpreting section 229A.7(3), the Iowa Supreme Court rejected Williams's argument that section 229A.7(3) governs only affirmative SVP determination and that negative SVP determinations are governed by Iowa's Rule of Civil Procedure 203(a), which permits non-unanimous jury verdicts. *Williams*, 628 N.W.2d at 454–55 (noting that "Williams successfully argued in advance of trial that, if the rules of civil procedure apply, rule 203(a) should permit a jury to find by a vote of seven to one that the respondent is *not* an SVP"). In a cursory statement, the Iowa Supreme Court asserted:

14

> There is only one issue on trial in a case like this—whether the respondent is a sexually violent predator under section 229A.7(3). Given that fact, and the fact that commitment requires a unanimous verdict, we think it would be absurd to conclude the legislature intended to permit a less-than-unanimous verdict to release the respondent. Such a result finds no support in this legislative scheme.

*Id.* at 455. We find this reasoning inadequate, lacking both textual analysis and any substantive argument regarding absurdity. But even were we to agree with this reasoning, the Texas legislative scheme, in contrast to the Iowa legislative scheme, provides support for such a result by expressly stating the rules of *civil* procedure apply. *See* Tex. Health & Safety Code § 841.146(b). The only reference to applicable rules for the SVP hearing in the Iowa statutory scheme at the time of *Williams* provided: "At the hearing on this [SVP] issue, the rules of evidence applicable in *criminal cases* shall apply[.]" Iowa Code § 229A.7(1) (1998) (emphasis added). Accordingly, we neither agree with the reasoning in *Williams* nor find it applicable to the interpretation of section 841.146(b).

Having concluded that the State's ambiguity, conflict, and absurdity arguments fail, we overrule the State's first issue and turn now to the State's second issue regarding the exclusion of evidence.

## B. Exclusion of Evidence

In its second issue, the State argues that the trial court erred by excluding evidence that Gipson invoked the Fifth Amendment when questioned at his deposition regarding committing a sexual offense against his daughter. Rulings on exclusion of evidence are reviewed under the abuse of discretion standard. *Caffe Ribs, Inc. v. State*, 487 S.W.3d 137, 142 (Tex. 2016). "A trial court abuses its discretion by failing to follow guiding rules and principles." *Id*. Because "[t]he trial

court has extensive discretion in evidentiary rulings, . . . we will uphold decisions within the zone of reasonable disagreement." *Diamond Offshore Servs. Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). "For the exclusion of evidence to constitute reversible error, the complaining party must show that (1) the trial court committed error and (2) the error probably caused the rendition of an improper judgment." *State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *see* Tex. R. App. P. 44.1. In determining whether any error probably caused the rendition of an improper judgment, "we must review the entire record." *Gunn v. McCoy*, 554 S.W.3d 645, 668 (Tex. 2018). Importantly, reversal is only appropriate if the error probably resulted in an improper judgment because "a litigant is not entitled to a perfect trial for, indeed, few trials are perfect." *Id*. (quoting *Lorusso v. Members Mut. Ins.*, 603 S.W.2d 818, 819–20 (Tex. 1980)).

In a civil case, a fact finder may draw reasonable inferences from a party's invocations of the Fifth Amendment. *See* Tex. R. Evid. 513(c); *see also Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *Wilz v. Flournoy*, 228 S.W.3d 674, 677 (Tex. 2007) (per curiam); *Lozano v. Lozano*, 52 S.W.3d 141, 150 (Tex. 2001) (per curiam) (Phillips, C.J., concurring); *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 763 (Tex. 1995); *Webb v. Maldonado*, 331 S.W.3d 879, 883 (Tex. App.—Dallas 2011, pet. denied).[4] But "[a]lthough the jury [is] free to draw a negative inference, a 'claim of privilege is not a substitute for relevant evidence.'" *Matbon, Inc. v. Gries*, 288 S.W.3d 471, 489 (Tex. App.—Eastland 2009, no pet.) (quoting *United States v. Rylander*, 460 U.S. 752, 761 (1983)); *see also Lozano*, 52 S.W.3d at 149 (Phillips, C.J., concurring);

---

[4] The State does not cite any authority applying this doctrine in civil commitment proceedings, but for purposes of this analysis, we assume without deciding that the doctrine applies.

16

*Webb*, 331 S.W.3d at 883; *Blake v. Dorado*, 211 S.W.3d 429, 433 (Tex. App.—El Paso 2006, no pet.). Without some other probative evidence, any negative inference drawn from a party's invocation of the Fifth Amendment cannot rise beyond "mere suspicion," and the inference "could not be considered as evidence at all." *Matbon*, 288 S.W.3d at 489–90; *see Lozano*, 52 S.W.3d at 149 (Phillips, C.J., concurring); *Webb*, 331 S.W.3d at 883; *Blake*, 211 S.W.3d at 434.

As an initial matter, Gipson claims the State did not preserve error as to this issue of excluded evidence. Rule 103 permits a party to claim error "only if the error affects a substantial right of the party and . . . a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Tex. R. Evid. 103(a)(2). It is undisputed the State did not submit an offer of proof, but the State argues the substance was apparent from the context. At trial, Gipson responded to the previous question regarding sexually assaulting his daughter before her daycare with "I wasn't in her life when she was in a daycare" and "I never confessed to touching my child." Thus, the State's question in context was "if [Gipson] pled the Fifth about this offense [i.e., sexually assaulting his daughter] when he talked about this before [at his deposition]," and the substance of the evidence was apparently Gipson pleading the Fifth about this offense at his deposition. Assuming without deciding that error was preserved, we nevertheless conclude that it would not be reversible error for the following reasons.

### 1. Cumulative Evidence

It is the State's burden on appeal "to indicate to which issue each particular piece of excluded evidence pertains and whether the judgment on that issue turned on the excluded evidence." *Cantu v. Texas Workforce Comm'n*, 145 S.W.3d 236, 245 (Tex. App.—Austin 2004, no

pet.).  In its opening brief, the State argues that Gipson gave "inconsistent versions of events" and the testifying experts "weighed his inconsistencies into their opinions."  Thus, according to the State, "the jury should have known that [Gipson] continued those inconsistencies during this civil case" and without knowing of Gipson's "repeated assertions of the Fifth Amendment during deposition," the jury "could not confirm the experts' conclusions" that were based on Gipson's inconsistencies and "they could not draw inferences adverse to [Gipson]."  However, as the State noted and our review of the record revealed, the State's expert witnesses explained and discussed the documents that they relied on for their opinions—including interviews with Gipson and their review of Gipson's deposition testimony—and testified about inconsistencies in Gipson's accounts.  Although the Texas Supreme Court has recognized "'the impossibility of establishing a specific test for determining harmful error,'" consistently it has explained that "[e]xclusion is likely harmless if the evidence was cumulative." *Gunn*, 554 S.W.3d at 668 (quoting *Caffe Ribs*, 487 S.W.3d at 145).  We conclude that the evidence here is cumulative as to the State's point that Gipson made "inconsistent versions of events," and therefore that it is unlikely to have caused the rendition of an improper judgment.[5]

---

[5] Moreover, the State specifically asked its expert to explain what Gipson had said during his deposition regarding the allegations that he committed a sexual offense against his daughter, to which the expert replied:  "He said that nothing happened, that he disputed that -- that she had even -- that she personally made allegations or that there was any substance to them.  He said that he never did anything with her of a sexual manner."

18

## 2. Lack of Probative Evidence

In its reply brief, the State argues that "the jury could have inferred from [Gipson's] Fifth Amendment assertion that he [committed a] sexual[] offen[se] against [his daughter]."[6] At trial, the State's expert witness explained that one of the records he reviewed was a letter written to Gipson's parole board from the mother of Gipson's daughter, which indicated Gipson's daughter was an unadjudicated victim of Gipson, but also stated that later, when the daughter was interviewed and recorded, "she didn't make the allegations under those circumstances, [] she made these allegations just specifically to the mother." The State's expert also testified that the only "evidence whatsoever that any offending took place against [Gipson's daughter]" was the letter written by the daughter's mother, and the expert had not seen any other evidence of an offense against the daughter nor any records of the daughter accusing her father.

However, although the State's expert testified as to the letter from the mother of Gipson's daughter that indicated Gipson may have committed a sexual offense against his daughter, the letter was never admitted into evidence and State's counsel asserted "my expert is not testifying to the truth of the matter," rather "[h]e's testifying to what he reviewed and relied upon in forming his opinion in the case." Further, the trial court provided a limiting instruction to the jury that

---

[6] To the extent this constitutes a new argument, the State cannot raise it for the first time in the reply brief. *See* Tex. R. App. P. 38.1, 38.3; *Cebcor Serv. Corp. v. Landscape Design & Constr., Inc.*, 270 S.W.3d 328, 334 (Tex. App.—Dallas 2008, no pet.) (party may not present arguments for first time in reply brief); *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 439 (Tex. App.—Austin 2004, pet. denied) ("The rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised by appellant's original brief."). Nevertheless, leaving aside the question of briefing waiver, we conclude that there was no reversible error.

19

hearsay information relied upon by an expert is not to be considered "for any other purpose, including whether the facts alleged in the records are actually true"[7] and in discussion with the State's counsel, requested that the expert should "[j]ust make sure the jury knows that [the letter] came from the mother [of Gipson's daughter], allegedly through her, so that we know that it's like hearsay -- only hearsay almost, so the jury knows that." Accordingly, the expert's hearsay testimony admitted under a limiting instruction that addressed a letter that was never introduced into evidence does not constitute probative evidence as to whether Gipson committed a sexual offense against his daughter.

The State fails to identify any other probative evidence besides Gipson's invocation of the Fifth Amendment to support its claim that Gipson committed a sexual offense against his daughter, nor has our review of the record revealed such evidence. Moreover, at trial, Gipson repeatedly denied committing a sexual offense against his daughter, asserted that he was never alone with his daughter, and testified that he had "[j]ust learned" that he had been accused of committing a sexual offense against his daughter. Further, Gipson's sister testified that the family was planning for Gipson's release from prison and Gipson's daughter supports Gipson. Accordingly, had the jury heard the excluded evidence that Gipson invoked the Fifth Amendment, a negative inference from the evidence could not rise "beyond mere suspicion" and the "inference could not be considered as evidence at all" that Gipson committed a sexual offense against his daughter. *See Matbon*,

---

[7] The full instruction stated: "Hearsay evidence ordinarily would not be admissible in this trial, but because the expert witness relied upon these records in forming the basis of his opinion, you can hear about these records for the very narrow purpose of an explanation or support for his opinions, how he came about his opinions. You may not consider this hearsay information for any other purpose, including whether the facts alleged in the records are actually true."

288 S.W.3d at 490; *see also Webb*, 331 S.W.3d at 883.  We therefore conclude that even if the trial court had abused its discretion in excluding the evidence, which we do not decide here, the excluded "evidence" did not rise "beyond mere suspicion" and is unlikely to have caused the rendition of an improper judgment.  We overrule the State's second issue.

## CONCLUSION

Having overruled the State's issues on appeal, we affirm the trial court's final judgment.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Smith

Affirmed

Filed:   July 26, 2019