FILED
20-0394
5/27/2020 5:28 PM
tex-43278313
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# IN THE SUPREME COURT OF TEXAS

No. 20-0394

IN RE STATE OF TEXAS

ON PETITION FOR MANDAMUS

**Argued May 20, 2020**

JUSTICE BLAND, concurring.

The Texas Election Code does not permit all Texas voters who lack immunity to the COVID-19 virus to vote by mail. Lack of immunity to the COVID-19 virus will not, for all voters, create a likelihood that in-person voting will injure their health. But a lack of immunity to disease is a physical condition. And a voter who lacks COVID-19 immunity may be disabled under the Election Code if the voter's lack of immunity, together with that voter's health history and the local voting environment, causes a likelihood that in-person voting will injure the voter's health. Accordingly, I disagree with the Court that a "physical condition" under the Election Code excludes a lack of immunity to COVID-19. I otherwise join the Court's opinion denying relief.

# I

Voting-by-mail has existed in Texas for nearly 100 years.[1] Since 1935, Texas has permitted an eligible voter who is disabled, as the statute defines it, to request a mail-in ballot.[2] Originally, vote-by-mail applications based on disability required a physician's certificate.[3] But the Legislature eliminated that requirement in 1981.[4] It again declined to require proof of disability when it recodified the Election Code in 1985.[5]

The current Election Code provides that an eligible voter may request a mail-in ballot for five reasons: absence from the voter's county of residence, disability, reaching age 65, confinement in jail, or participation in a confidentiality program.[6] To receive a mail-in ballot, the voter must sign an application containing "an indication of the ground of eligibility" to vote absentee.[7] The law requires no further explanation, but it is a crime to falsify information on an application.[8]

---

[1] *See ante* ___ (explaining that voting before election day has been permitted by statute in Texas since 1917 and vote-by-mail since 1933) (first citing Act of May 26, 1917, 35th Leg. 1st C.S., ch. 40, § 1, 1917 Tex. Gen. Laws 62, 63–64; then citing Act of Jan. 30, 1933, 43rd Leg., R.S., ch. 4, § 1, 1933 Tex. Gen. Laws 5, 5-6).

[2] *See* Act of May 10, 1935, 44th Leg., R.S., ch. 300, § 1, 1935 Tex. Gen. Laws 700, 700–01.

[3] *See id.*, 1935 Tex. Gen. Laws at 701.

[4] *See* Act of May 26, 1981, 67th Leg., R.S., ch. 301, § 1, 1981 Tex. Gen. Laws 854, 854–55 (striking this requirement from Texas law).

[5] Act of May 24, 1985, 69th Leg., R.S., ch. 211, § 1, secs. 82.002, 84.001, 1985 Tex. Gen. Laws 802, 897, 901 (codified at TEX. ELEC. CODE §§ 82.002, 84.001–.002).

[6] TEX. ELEC. CODE §§ 82.001, .002, .003, .004, .007.

[7] *Id.* § 84.002(a)(6).

[8] *Id.* § 84.0041(a) ("A person commits an offense if the person: (1) knowingly provides false information on an application for ballot by mail; (2) intentionally causes false information to be provided on an application for ballot by mail; (3) knowingly submits an application for ballot by mail without the knowledge and authorization of the voter; or (4) knowingly and without the voter's authorization alters information provided by the voter on an application for ballot by mail."). An offense under section 84 "is a state jail felony." *Id.* § 84.0041(b).

To request a mail-in ballot based on disability, the voter must have "a sickness or physical condition that prevents the voter from appearing at the polling place on election day without a likelihood of . . . injuring the voter's health."[9] These requirements appear in Texas Election Code section 82.002:

> DISABILITY. (a) A qualified voter is eligible for early voting by mail if the voter has a sickness or *physical condition* that prevents the voter from appearing at the polling place on election day without a likelihood of needing personal assistance or of injuring the voter's health.
>
> (b) Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote under Subsection (a).[10]

The State maintains, among other grounds for requesting relief, that a lack of COVID-19 immunity is not a "physical condition" under section 82.002, and thus no voter is entitled to vote by mail on that basis. The Harris County Clerk takes the polar opposite position—that all Harris County voters are "disabled" on Election Day.[11] To resolve this dispute, we must determine the meaning of a "physical condition" and its place in the overall definition of disability.

---

[9] *Id.* § 82.002(a).

[10] *Id.* (emphasis added).

[11] According to the Harris County Clerk, "all voters should be free to vote by mail in the July 14 run-off and the November election."

## II

## A

Because the Election Code does not define "physical condition," we look to its "common, ordinary meaning."[12] The parties do not dispute that "physical" means "of or relating to the body."[13] "Condition" means "*the state of something*, especially with regard to its appearance, quality, or working order."[14] In particular, it means "a person's or animal's state of health or physical fitness."[15] The reasonable reading of these definitions—analyzed individually and in connection with one another—is that a lack of immunity, dealing as it does with the *state* of a person's immune system (part of the *physical body*) is a "physical condition."

Reading "physical condition" to exclude a lack of immunity to disease is too narrow a construction. The Legislature could have left the definition of disability at "sickness" or qualified

---

[12] *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563 (Tex. 2014) (plurality opinion) ("When a statute uses a word that it does not define, our task is to determine and apply the word's common, ordinary meaning."); *see also BankDirect Capital Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 87 (Tex. 2017) ("We must rely on the words of the statute, rather than rewrite those words to achieve an unstated purpose." (quoting *Jaster*, 438 S.W.3d at 571)).

[13] *Physical*, AMERICAN HERITAGE DICTIONARY (5th ed. 2020); *Physical*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/physical (last visited May 25, 2020); *see also Physical*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (defining "physical" as "relating to the body as opposed to the mind . . . ."). The Court analyzes undefined words by reviewing dictionary definitions. *Jaster*, 438 S.W.3d at 563 (citing *Epps v. Fowler*, 351 S.W.3d 862, 873 (Tex. 2011) (Hecht, J., dissenting) ("The place to look for the ordinary meaning of words is . . . a dictionary.")).

[14] *Condition*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010) (emphasis added); *see also Condition*, AMERICAN HERITAGE DICTIONARY (5th ed. 2020) (defining "condition" as "[a] mode or state of being"); *Condition*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/condition (last visited May 25, 2020) (defining "condition" as "a state of being").

[15] *Condition*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010). The New Oxford American Dictionary's first definition ("subsense") under the main definition ("core sense") is "a person's or animal's state of health or physical fitness." *Id.* "[A]n illness or other medical problem" follows only after that. *Id.* And, in using that dictionary as a reference, "readers can be confident that the first definition they see is the one most likely to be used by people today . . . ." NEW OXFORD AMERICAN DICTIONARY, https://www.oxfordreference.com/view/10.1093/acref/9780195 392883.001.0001/acref-9780195392883 (last visited May 25, 2020). *See also* OXFORD ENGLISH DICTIONARY (3d ed. 2000) (privileging the definition "[a] particular mode of being of a person or thing; state of being" over the definition "[a] state of health, esp. one which is poor or abnormal; a malady or sickness").

4

"physical condition"; it did not.[16] It could have used "physical limitation" or "physical defect" or "physical ailment"; it did not. Section 82.002 subsection (b) instructs that "expected or likely confinement for childbirth" qualifies as a disability under subsection (a).[17] Expecting a child is not an "unusually defective state of health"—one can be healthy and pregnant. Instead, subsection (b)'s inclusion of a "non-limiting example," *see* Tex. Att'y Gen. Op. No. KP-0009 2 (2015), indicates that the Legislature intended for "physical condition" to mean something broader than a defective physical state. We should not read "physical condition" to exclude lack of immunity to COVID-19 when the term's plain meaning indicates otherwise.[18]

The State relies on a tertiary dictionary definition of "condition" to mean an "illness or medical problem," and posits that a lack of immunity is neither. The more common definition, however, is not limited—the term more commonly means "a person's or animal's state of health or physical fitness."[19] Here, the Legislature provides no indication in the Election Code that a "physical condition" is limited to any particular physical attribute that creates the likelihood of injury to the voter's health from voting in-person.[20] Understanding "physical condition" to mean

---

[16] We have said that "by not reading language into the statute when the legislature did not put it there . . . we build upon the principle that 'ordinary citizens [should be] able to rely on the plain language of a statute to mean what it says.'" *City of Rockwall v. Hughes*, 246 S.W.3d 621, 628 (Tex. 2008) (alteration in original) (quoting *Fitzgerald v. Advanced Spine Fixation Sys.*, 996 S.W.2d 864, 866 (Tex. 1999)).

[17] TEX. ELEC. CODE § 82.002(b) ("Expected or likely confinement for childbirth on election day is sufficient cause to entitle a voter to vote under Subsection (a).").

[18] Further, titles do not inform the meaning of a statute. "The heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." TEX. GOV'T CODE § 311.024; *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 47 n.4 (Tex. 2015) ("When the plain meaning of a statute controls, . . . the title of the section carries no weight, as a heading does not limit or expand the meaning of a statute." (quotation marks omitted)). Replacing the Legislature's definition of disability with a different one is unwarranted.

[19] *Condition*, NEW OXFORD AMERICAN DICTIONARY (3d ed. 2010).

[20] *See Tex. Dep't of Criminal Justice v. Rangel*, 595 S.W.3d 198, 210 (Tex. 2020) (observing that we "'may not impose [our] own judicial meaning on a statute by adding words not contained in the statute's language,' and we presume that 'the Legislature purposefully omitted words it did not include'" (alteration in original) (quoting *Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019))).

simply "an illness or medical problem," gives the term a meaning akin to sickness, rendering it, inappropriately, "mere surplusage."[21] The term is better understood according to its usual definition: a physical state of the body, but in this context only one that creates a likelihood of injury from in-person voting.[22]

And that physical state is not the same for any two individuals. In that sense, we are all atypical, with widely variable abilities to combat disease. "Physical condition" covers those physical attributes that determine a person's state of health. We interpret the words the Legislature has chosen, and we assume they have chosen the words with care.[23] Applying those words, a lack of immunity is a "physical condition" under the Election Code.

**B**

Including a lack of immunity as a physical condition does not mean that all Texas voters who lack immunity to COVID-19 are disabled and eligible for mail-in ballots. The Court suggests that the statute must provide some limit on what qualifies as a disability; otherwise, the Legislature would have afforded mail-in ballots to all voters, and no other mail-in category is needed. And, of course, the statute provides substantial limits. First, the statutory definition eliminates anything *not* physical from consideration—thus, a generalized fear of contracting COVID-19 or some non-physical reason does not entitle a voter to apply for a mail-in ballot based on a disability. Second,

---

[21] *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016) ("Our objective is to ascertain and give effect to the Legislature's intent as expressed in the statute's language. In doing so, we consider the statute as a whole, giving effect to each provision so that none is rendered meaningless or mere surplusage." (footnote omitted)). The State defines sickness as the "state of being ill" or "having a particular type of illness or disease."

[22] TEX. ELEC. CODE § 82.002.

[23] *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 325–26 (Tex. 2017) ("We presume the Legislature 'chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.'" (quoting *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011))).

the statute requires that the voter's "physical condition" cause a "likelihood" of injury to the voter's health from in-person voting.[24] Without that likelihood, a person is not disabled and not eligible to vote-by-mail for that reason.

A local community containing a high number of people with active infection of a contagious virus presents a health risk for some voters—specifically, those who lack immunity and have health histories or physical attributes that make them susceptible to the worst effects of the disease. But not all areas of Texas are affected—or are affected to the same degree—and the Secretary of State has prepared plans so that voters may vote safely. The level of active infection and protective measures affect the voting environment and, in turn, affect whether any "likelihood" of injury to one's health by in-person voting exists. When coupled with the voter's health history and the level of active infection in the voter's community, a lack of immunity may or may not lead the voter to conclude that in-person voting is likely to injure the voter's health.

The Court acknowledges that other health deficits might qualify as physical conditions but that a lack of immunity "without more" is not a physical condition. This ignores typical physical states and past medical history that are not ailments or defects but may be contributing factors for an individual voter (age, gender, past lung ailments, smoking history, and weight, to name a few).[25] In any event, the "more" does not transform a lack of immunity into a condition; rather, it affects the risk level associated with having that condition. A lack of immunity may present no likelihood at all that in-person voting will injure a voter. But that same lack of immunity might place a voter

---

[24] Tex. Elec. Code § 82.002.

[25] *See* CDC COVID-19 Response Team, Morbidity & Mortality Weekly Report, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020, at 383–85 (Mar. 31, 2020), http://dx.doi.org/10.15585/mmwr.mm6913e2.

7

at risk based on the voter's innumerable other physical characteristics and the voting environment—the physical condition does not change; it is the risk associated with that condition that changes.

The Election Code does not define likelihood. The State suggests that "likelihood" means "probably," and we have defined it that way.[26] Determining the "likelihood" of injury from a lack of immunity depends entirely on an individual voter's overall physical condition, voting environment, and health history. We cannot predict—and neither can election officials— whether the likelihood of contracting COVID-19 is probable, or whether "a lack of immunity alone" could likely cause injury from voting in person." The Election Code does not suggest that such a probability is for a county election official or a court to determine.

Rather, the plain text of the Election Code makes clear that it is the voter—not an election official—who determines whether a "physical condition" will cause a "likelihood" that voting in person will injure the voter's health. The respondent county clerks have a ministerial duty to approve a voter's properly completed application for a mail-in ballot based on a "disability."[27] They have no duty—or right—to inquire into a voter's health history or to instruct a voter as to whether the voter has a disability.[28] Election officials are not health care providers. Government

---

[26] *See State v. K.E.W.*, 315 S.W.3d 16, 23 (Tex. 2010) (recognizing that "reasonable probability" is synonymous with "likelihood"').

[27] TEX. ELEC. CODE § 86.001(a)–(b).

[28] The State concedes that election clerks "have no discretion to do anything but determine whether the voter is entitled to vote by mail and process the application accordingly." To be entitled to vote-by-mail, a person must complete an application, stating the ground of eligibility. TEX. ELEC. CODE § 84.001(a). A voter is "entitled" to vote by mail based on the application the voter submits to the state. Chapter 86 includes no authorization to reject an application based on an election clerk's determination of its veracity. *Compare* Act of May 24, 1985, 69th Leg., R.S., ch. 211, § 1, secs. 82.002, 84.001, 1985 Tex. Gen. Laws 802, 897, 901 (codified at TEX. ELEC. CODE §§ 82.002, 84.001), *with* Act of May 10, 1935, 44th Leg., R.S., ch. 300, § 1, 1935 Tex. Gen. Laws 700, 700–01. The Attorney General has opined that no proof of disability is required in prior guidance. Tex. Att'y Gen. Op. No. KP-0009 2 n.2 (2015).

officials do not inquire into the health of a citizen in connection with that citizen's exercising the right to vote.[29]

Thus, under the Election Code, an election official may neither dictate that a voter without immunity is disabled, nor dictate the opposite conclusion. No such mandate is present in the statute. Recognizing this, the Texas Secretary of State's office has informed local election officials that they may not deny a ballot to voters who claim to be disabled, because local election officials "do not have any authority to police that."[30] Instead, the Legislature left it to the voter to make that determination. It is not the place of election officials to categorically determine whether lack of immunity to COVID-19 is, or is not, a "physical condition that prevents [a] voter from appearing at the polling place on election day without a likelihood . . . of injuring the voter's health."[31]

Finally, the State observes that voting by mail presents particular challenges to ensuring the integrity of the state's elections. The majority of voting fraud cases prosecuted in the last decade were based on mail-in ballot schemes in which ballots were obtained and marked by people other than an eligible voter. A fraudulent application for a mail-in ballot should lead to prosecution against the person perpetrating the fraud.[32] But the possibility of fraud does not allow for the disenfranchisement of eligible voters who complete an application for a mail-in ballot according to the Election Code.[33]

---

[29] *See* TEX. ELEC. CODE § 86.001.

[30] The Texas Secretary of State is the State's chief election officer. *See id.* § 31.003 ("The secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code.").

[31] *Id.* § 82.002(a).

[32] *See id.* §§ 84.0041, 273.021, 273.022.

[33] The right to vote is the "preservative of all rights." *Shelby County v. Holder*, 570 U.S. 529, 566 (2013) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)).

&ast;　　&ast;　　&ast;

In defining a "physical condition," the Legislature did not parse out which physical attributes qualify. The Legislature, in choosing the text that it did, placed that decision in the hands of the voter. As a limitation, however, it added a second (and higher) hurdle: whatever the physical condition, that condition must create not a fear, but instead a "likelihood," that in-person voting will injure the voter's health. Election officials and courts should not supplant the voter's role in making that determination. Because we should not define a "physical condition" to except a lack of immunity to disease, I respectfully concur in the Court's judgment.

_____
Jane N. Bland
Justice

**OPINION DELIVERED:** May 27, 2020

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 43278313
Status as of 05/27/2020 17:30:33 PM -05:00

Associated Case Party: The State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kyle Hawkins | 24094710 | kyle.hawkins@oag.texas.gov | 5/27/2020 5:28:00 PM | SENT |

Associated Case Party: Texas Public Policy Foundation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Yvonne Simental | | ysimental@texaspolicy.com | 5/27/2020 5:28:00 PM | SENT |
| Robert Henneke | | rhenneke@texaspolicy.com | 5/27/2020 5:28:00 PM | SENT |

Associated Case Party: Zachary Price

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Zacahry Price | | tbuser-clancy@aclutx.org | 5/27/2020 5:28:00 PM | SENT |

Associated Case Party: McCaffity for Congress

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Debbie Rima | | drima@textrial.com | 5/27/2020 5:28:00 PM | SENT |
| Sean JMcCaffity | | smccaffity@textrial.com | 5/27/2020 5:28:00 PM | SENT |

Case Contacts

| Name |
|------|
| Peter Kennedy |
| P Schenkkan |
| Scott Brazil |
| Scott A. Brister |
| Cynthia Wilson Veidt |

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 43278313
Status as of 05/27/2020 17:30:33 PM -05:00

Case Contacts

| |
|---|
| Bill Davis |
| Sherine Elizabeth Thomas |
| Leslie Wood Dippel |
| Sharon Kay Talley |
| Luis V. Saenz |
| Susan Lea Hays |
| Jo Anne Bernal |
| David A. Escamilla |
| Barbara Sally Ann Nicholas |
| Russell H. Roden |
| Douglas P. Ray |
| Natalie Thompson |
| Hollis Duncan |
| Marianne W.Nitsch |
| Maria Williamson |
| Cecilia Hertel |
| Anne LSchievelbein |
| Lanora Pettit |
| Martin Golando |
| Rob Meyerhoff |
| Dicky Grigg |
| Mel Noyola |
| Gwen Kelly |
| Kevin McCary |
| Thomas Buser-Clancy |
| Chad Dunn |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below:

Envelope ID: 43278313
Status as of 05/27/2020 17:30:33 PM -05:00

Case Contacts

| Jo AnnBernal | | jbernal@epcounty.com | 5/27/2020 5:28:00 PM | SENT |
|---|---|---|---|---|
| Jed Untereker | | JUntereker@epcounty.com | 5/27/2020 5:28:00 PM | SENT |

Associated Case Party: Remi Garza

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Irene Guerra-Jaramillo | | iguerra1@co.cameron.tx.us | 5/27/2020 5:28:00 PM | SENT |
| Juan A. Gonzalez | | juan.gonzalez@co.cameron.tx.us | 5/27/2020 5:28:00 PM | SENT |
| Daniel N. Lopez | | daniel.n.lopez@co.cameron.tx.us | 5/27/2020 5:28:00 PM | SENT |

Associated Case Party: Healthcare Profressionals and Institutions

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy L.Saberian | | asaberian@enochkever.com | 5/27/2020 5:28:00 PM | SENT |
| Amanda Garrett Taylor | 24045921 | amanda.taylor@butlersnow.com | 5/27/2020 5:28:00 PM | SENT |
| Laci Lindsey | | llindsey@enochkever.com | 5/27/2020 5:28:00 PM | SENT |
| Michael STruesdale | | mtruesdale@enochkever.com | 5/27/2020 5:28:00 PM | SENT |