# Supreme Court of Texas

No. 22-0224

Warren K. Paxton, in His Official Capacity as Attorney General
of Texas; Shawn Dick, in His Official Capacity as Williamson
County District Attorney,

*Appellants*,

v.

Isabel Longoria; Cathy Morgan,

*Appellees*

On Certified Questions from the
United States Court of Appeals for the Fifth Circuit

**Argued May 11, 2022**

Justice Huddle delivered the opinion of the Court.

This suit involves a pre-enforcement challenge to a recently enacted Election Code provision that makes it an offense for certain officials to "solicit[]" the submission of applications to vote by mail from persons who have not requested such applications. The plaintiffs sued in federal court to enjoin enforcement of this anti-solicitation provision as well as another provision that imposes civil penalties for violations. Two of the defendants, including the Texas Attorney General, sought

dismissal for lack of standing and based on sovereign immunity. The district court granted a preliminary injunction, and the defendants appealed. Concluding that standing and immunity are threshold issues on appeal, the United States Court of Appeals for the Fifth Circuit certified three questions to us: (1) whether one of the plaintiffs, a volunteer deputy registrar, is a "public official" to whom the anti-solicitation provision applies; (2) whether certain types of speech constitute "solicitation" under that provision; and (3) whether the Attorney General can enforce the civil penalties.

Although the parties indicated to the federal courts that they were adverse on these questions, their briefing in this Court makes clear that they now agree that the answer to the first and third questions is no. We therefore answer "no" to the first and third questions based on the parties' agreement, and, due to the lack of adversity between the parties on these issues, we limit the scope and binding effect of these two answers to this case alone.

With respect to the second certified question, we answer that the statute's definition of "solicits" is not so narrowly limited as to cover only seeking applications for violative mail-in ballots, nor is it so broad as to cover speech that merely informs listeners that they may apply. Finally, while we have not been asked to (and therefore do not) provide a comprehensive definition of "solicits" under Election Code Section 276.016(a)(1), we conclude that the scope of "solicits" is not limited to a demand for the submission of an application for a mail-in ballot.

## I.    Background

During its second called session of 2021, the Legislature enacted Senate Bill 1, the Election Integrity Protection Act of 2021. 87th Leg., 2d C.S., ch. 1, § 1.01, 2021 Tex. Sess. Law Serv. ___. The stated purpose of the Act was "to make all laws necessary to detect and punish fraud" in connection with elections. *Id.* § 1.02. The Act made several changes to the Election Code, two of which are relevant here.

First, the Act creates an offense for certain officials who "knowingly . . . solicit[]" the submission of an application to vote by mail from someone who did not request one:

> A public official or election official commits an offense if the official, while acting in an official capacity, knowingly:
> (1) solicits the submission of an application to vote by mail from a person who did not request an application . . . .

TEX. ELEC. CODE § 276.016(a).[1] This provision does not apply if the public official or election official "provided general information about voting by mail, the vote by mail process, or the timelines associated with voting." *Id.* § 276.016(e)(1). Nor does it apply if the official "engaged in the conduct . . . while acting in the official's capacity as a candidate for a public elective office." *Id.* § 276.016(e)(2).

Second, the Act imposes a civil penalty on election officials employed by the government who violate the Election Code:

---

[1] Section 276.016(a) also prohibits public officials and election officials from distributing vote-by-mail applications to persons who did not request them, using public funds for third-party distribution of vote-by-mail applications to those who did not request them, and completing a portion of a vote-by-mail application and distributing it to an applicant. TEX. ELEC. CODE § 276.016(a)(2)–(4). Only subsection (a)(1) is at issue here.

3

> An election official may be liable to this state for a civil penalty if the official: (1) is employed by or is an officer of this state or a political subdivision of this state; and (2) violates a provision of this code.

*Id.* § 31.129(b). This civil penalty may include "termination of the person's employment and loss of the person's employment benefits." *Id.* § 31.129(c). The statutory text makes plain that the anti-solicitation and civil-penalty provisions are different in scope. Section 276.016(a)(1) applies to a "public official or election official," while Section 31.129 applies only to an "election official."

The Election Code's definition of "election official," to whom both the anti-solicitation and civil-penalty provisions apply, expressly includes "an elections administrator." *Id.* § 1.005(4–a)(C). Each of Texas's 254 counties may appoint an elections administrator for the county. *Id.* §§ 31.031, .032. Among other things, an elections administrator is required to perform the duties of the county's voter registrar.[2] *Id.* § 31.043(1). The Election Code assigns a voter registrar the responsibility of "conduct[ing] voter registration activities," which includes receiving applications from persons wanting to register to vote. *See id.* §§ 12.004(a), 13.002(a).

The Election Code also permits a county's voter registrar to appoint one or more deputy registrars, including volunteer deputy registrars (VDRs). *Id.* §§ 12.006(a), 13.031. The Election Code

---

[2] Counties are not required to appoint an elections administrator. *See id.* § 31.031(a) (stating that a county "*may* create the position of county elections administrator for the county" (emphasis added)). A county may instead have its tax assessor–collector or county clerk serve as voter registrar. *Id.* § 12.001.

prescribes the role of a VDR, which is to "distribute voter registration application forms throughout the county and receive registration applications submitted to the [VDR] in person." *Id.* § 13.038. Upon receipt of an application, a VDR must review it for completeness in the applicant's presence and return it for completion if necessary. *Id.* § 13.039. On receipt of a completed application, a VDR must deliver it to the county's voter registrar. *Id.* § 13.042.

Plaintiff Isabel Longoria was appointed in 2020 to serve as the County Elections Administrator for Harris County. Plaintiff Cathy Morgan is an Austin resident who serves as a VDR in Travis and Williamson Counties. Longoria and Morgan sued Attorney General Warren K. Paxton and the District Attorneys of Harris, Travis, and Williamson Counties, all in their official capacities, in federal court. Plaintiffs allege that Section 276.016(a)(1) violates the First and Fourteenth Amendments both on its face and as applied to "truthful speech encouraging people who are or may be eligible to vote by mail to request applications for such mail ballots." Plaintiffs seek a declaration to that effect and an injunction against all defendants to prevent them from enforcing Section 276.016(a)(1). Longoria also seeks an injunction to forestall civil penalties under Section 31.129 for any alleged violations of Section 276.016(a)(1).

Attorney General Paxton and the Williamson County District Attorney, Shawn Dick, each moved to dismiss the suit.[3] Both assert that

---

[3] The District Attorneys of Harris County (Kim Ogg) and Travis County (José Garza) each filed a stipulation in which they agreed not to enforce Section 276.016(a)(1) in this case "until such time as a final, non-appealable decision has been issued."

5

Plaintiffs lack standing and that Plaintiffs' claims are precluded by sovereign immunity because they failed to plausibly allege that they will be subjected to prosecution or a civil-enforcement action for the speech in which they wish to engage.

The district court concluded that both Plaintiffs had standing and granted a preliminary injunction. *Longoria v. Paxton*, ___ F. Supp. 3d ___, 2022 WL 447573, at *10, *20 (W.D. Tex. Feb. 11, 2022). As to Morgan, the court held that VDRs "likely qualify as public officials under Section 276.016(a)(1)." *Id.* at *9. And the district court concluded that Longoria established that Paxton had a sufficient connection with enforcement of Section 276.016(a)(1) through the civil penalties in Section 31.129 to establish an exception to Paxton's sovereign-immunity defense. *Id.* at *11–13. Finally, the court held that Plaintiffs were likely to succeed on the merits of their claims because Section 276.016(a)(1) "prohibits encouraging others to request an application to vote by mail . . . through speech." *Id.* at *17.

Paxton and Dick appealed the preliminary injunction. The Fifth Circuit concluded there were two threshold issues on appeal: "whether Plaintiffs have standing to pursue their claims and whether Longoria's claim against Paxton is barred by sovereign immunity." *Longoria v. Paxton*, No. 22-50110, 2022 WL 832239, at *1 (5th Cir. Mar. 21, 2022) (per curiam). The court further concluded that these questions turn on three "core state law issues":

> (1) the interpretation of the term "public official" under the Texas Election Code; (2) the scope of "solicitation" within the challenged provision; and (3) the identity of the state officer tasked with enforcing the civil liability provision.

6

*Id.* The Fifth Circuit therefore certified to us the following three questions:

> (1) Whether Volunteer Deputy Registrars are "public officials" under the Texas Election Code;
>
> (2) Whether the speech Plaintiffs allege that they intend to engage in constitutes "solicitation" within the context of Texas Election Code § 276.016(a)(1). For example, is the definition narrowly limited to seeking application for violative mail-in ballots? Is it limited to demanding submission of an application for mail-in ballots (whether or not the applicant qualifies) or does it broadly cover the kinds of comments Plaintiffs stated that they wish to make: telling those who are elderly or disabled, for example, that they have the opportunity to apply for mail-in ballots?; and
>
> (3) Whether the Texas Attorney General is a proper official to enforce Texas Election Code § 31.129.

*Id.* at *6–7.

## II. Discussion

### A. The parties agree that Morgan, the VDR in this case, is not a "public official" under Section 276.016(a)(1).

Both Paxton and Dick argue that Morgan failed to establish that she has standing to pursue her claims. In his motion to dismiss, Paxton argued that Morgan "alleges no facts suggesting that she will be considered a 'public official.'" Dick likewise asserted that Morgan failed to plausibly allege or show that, as an unpaid volunteer, she is a "public official" potentially subject to the provisions of Section 276.016(a)(1). But neither defendant definitively argued to the district court that Morgan was *not* a public official. And Paxton contended that the district court should abstain under *Railroad Commission of Texas v. Pullman*

7

*Co.*, 312 U.S. 496 (1941), due to unsettled questions of state law, including "whether Texas courts will treat [VDRs] as public officials covered by Section 276.016(a)(1)." For her part, Morgan responded in the district court that VDRs *do* "qualify as public officials under Section 276.016(a)(1)."

The district court concluded that VDRs "likely qualify as public officials under Section 276.016(a)(1)." 2022 WL 447573, at *9. It relied on Government Code Section 22.304, also enacted as part of Senate Bill 1. Section 22.304 defines "public official" for purpose of that section only[4] as "any person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of this state, a government agency, a political subdivision, or any other public body established by state law." TEX. GOV'T CODE § 22.304(a). In the Fifth Circuit, Plaintiffs argued that this holding was correct.

The Fifth Circuit concluded that the question of whether a VDR is a "public official" under Section 276.016(a)(1) was determinative of Morgan's standing. 2022 WL 832239, at *3. Given the parties' respective positions at the time the Fifth Circuit certified its questions to us, the court—quite reasonably—could have expected that the parties would present competing views on whether Morgan qualifies as a "public official" under Section 276.016(a)(1). Instead, all parties now agree that she does not.

---

[4] Government Code Section 22.304 governs the assignment of an appellate panel to hear a proceeding for mandamus or injunctive relief under Election Code Chapter 273 and prohibits a person, "including a public official," from attempting to influence the composition of the panel. TEX. GOV'T CODE § 22.304(b), (c).

8

The Texas Constitution gives our Court jurisdiction to answer certified questions of state law. TEX. CONST. art. V, § 3–c(a); *see Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 n.6 (Tex. 2020) (describing the answer to a certified question as "a constitutionally permissible advisory opinion"). To accept a certified question, there must exist some question of state law whose resolution is necessary to resolve the parties' dispute in the underlying case. *See* TEX. R. APP. P. 58.1 (authorizing our Court to answer "determinative questions of Texas law"). At the time this Court accepted the certified questions, judicial resolution of this state-law question was necessary to resolve the parties' dispute. But that is no longer true, because the parties now agree that Morgan is not a "public official" for purposes of Section 276.016(a)(1). Put differently, the state-law question the Fifth Circuit deemed determinative of whether Morgan has standing is no longer disputed and therefore does not require resolution by this Court. *See id.*

We have held that adversity between parties is a jurisdictional prerequisite, as without such adversity there is no justiciable controversy. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001); *Davis v. First Nat. Bank of Waco*, 161 S.W.2d 467, 472 (Tex. [Comm'n Op.] 1942); *see also Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993) (noting courts lack jurisdiction absent "a real controversy between the parties" (quoting *Bd. of Water Eng'rs v. City of San Antonio*, 283 S.W.2d 722, 724 (Tex. 1955))). And appellate courts have no jurisdiction to decide cases in which there is no live controversy. *City of Krum v. Rice*, 543 S.W.3d 747, 749–50 (Tex. 2017). Here, we

9

could exercise jurisdiction under Rule 58.1 to provide a reasoned answer to the certified question based on an analysis of Section 276.016(a)(1) and other authorities. *See* TEX. R. APP. P. 58.1. Nevertheless, the lack of adversity between the parties counsels against exercising jurisdiction to decide an important and novel state-law question that has binding effect beyond this case. *See In re Abbott*, 628 S.W.3d 288, 298 (Tex. 2021) (stating that "our legal system depends" on "the adversarial process"); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1232–33 (2018) (Gorsuch, J., concurring) ("[T]he crucible of adversarial testing is crucial to sound judicial decisionmaking. We rely on it to 'yield insights (or reveal pitfalls) we cannot muster guided only by our own lights.'" (quoting *Maslenjak v. United States*, 137 S. Ct. 1918, 1931 (2017) (Gorsuch, J., concurring))).[5] We therefore conclude the proper course, based on the lack of adversity between the parties as to whether Morgan is a "public official" under Section 276.016(a)(1), is to answer "no" based solely on the fact of the parties' agreement, such that our response shall have no effect beyond this case.[6]

---

[5] It is for similar reasons we have held that an agreed judgment, "rendered without a fully adversarial trial," is not binding on other parties or even admissible as evidence. *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 714 (Tex. 1996).

[6] The parties' changes in position in this Court seem to be an outgrowth of the posture of this case—it is a pre-enforcement challenge, the resolution of which could turn on whether Plaintiffs have standing and whether the government is immune. In a criminal prosecution (or civil-enforcement action), one ordinarily might expect the government to take a broad view of the statute's application and the defendant to take a narrow view. But to establish (or defeat) a plaintiff's standing in a pre-enforcement challenge, the plaintiff has an incentive to argue that the statute does apply to her, while the

10

**B.** **Determining whether speech constitutes solicitation under Section 276.016(a)(1) requires examination of the words used and the surrounding context.**

The second certified question asks whether particular speech in which Plaintiffs allege they wish to engage constitutes solicitation within Section 276.016(a)(1). The record includes numerous examples of statements Plaintiffs allege they wish to make. It also includes testimony regarding types of conduct in which Plaintiffs say they wish to engage. Plaintiffs' descriptions of the intended speech and conduct are in many instances quite general.[7] Recognizing the difficulty of applying Section 276.016(a)(1) to these statements in the abstract and without necessary context, the Fifth Circuit has not asked us to define the precise contours of the term "solicits" as used in the statute. Nor has it asked us to opine on whether each example proffered by Plaintiffs does or does not constitute solicitation under Section 276.016(a)(1). Instead, the court directs our focus to three general questions regarding the term's breadth:

- Is the definition narrowly limited to seeking applications for violative mail-in ballots?

---

government has an incentive to argue it does not. The unusual dynamic present here contributes to our reluctance to make wide-ranging proclamations on the issues of state law presented.

[7] For example, Longoria wishes to "affirmatively encourag[e] individual voters to request an application to vote by mail" and "encourage[] voters eligible to vote by mail to do so." Longoria also testified that a county commissioner told her to "do everything you can to encourage people to vote by mail" but she felt the anti-solicitation provision prohibited her from doing anything "proactive."

11

- Is the definition limited to demanding submission of an application for mail-in ballots (whether or not the applicant qualifies)?

- Does the definition broadly cover the kinds of comments Plaintiffs stated that they wish to make: telling those who are elderly or disabled, for example, that they have the opportunity to apply for mail-in ballots?

**1. Section 276.016(a)(1) is not narrowly limited to seeking applications from those ineligible to vote by mail.**

The Fifth Circuit first asks whether the definition of "solicits" is "narrowly limited to seeking application for violative mail-in ballots." 2022 WL 832239, at *6. Plaintiffs urge us to read Section 276.016(a)(1) in this way. They assert this reading avoids thorny constitutional questions they contend would result from a broader reading and therefore is required as a matter of constitutional avoidance. They also contend this narrow and "more legalistic" interpretation is supported because, when the Legislature makes solicitation a criminal offense, the underlying conduct is "virtually always a crime or a civil infraction of some kind." *See Solicitation*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "solicitation" as "[t]he criminal offense of urging, advising, commanding, or otherwise inciting another to commit a crime"). Plaintiffs contend we should not ascribe the term its ordinary meaning because, according to them, that would cause the statute to encompass many communications with voters in which they are "requesting, urging, encouraging, seeking, imploring, or inducing people to submit mail-in ballot applications," which, according to Plaintiffs, should not be unlawful unless the person is ineligible to vote by mail.

12

We must reject this interpretation, however, because it is inconsistent with the statute's plain text. *See BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017) ("The text is the alpha and the omega of the interpretive process."). Under the canon of constitutional avoidance, we should, "if possible," interpret a statute in a manner that avoids constitutional infirmity. *Quick v. City of Austin*, 7 S.W.3d 109, 115 (Tex. 1998). But this canon of construction applies only when the statutory language is ambiguous. *Iancu v. Brunetti*, 139 S. Ct. 2294, 2301 (2019). That is not the case here.[8]

Although the statute does not define what it means to "solicit," it is positively clear about *whom* officials are prohibited from soliciting. The statute does not prohibit solicitation merely of those ineligible to vote by mail. Its text leaves no doubt that the prohibition extends more broadly to the larger universe of persons who "did not request an application." TEX. ELEC. CODE § 276.016(a)(1). Plaintiffs seek to use the alleged uncertainty over what speech constitutes solicitation to add words to the portion of the statute that unambiguously describes the object of the solicitation. They effectively ask us to rewrite the text to prohibit solicitation of "submission of an application to vote by mail from a person who did not request an application [*and who is ineligible to vote by mail*]." This reading is contrary to the statute's plain text, and we therefore must reject it. *See In re Fox River Real Est. Holdings, Inc.*, 596

---

[8] We note that Paxton argued in the federal courts that Section 276.016(a)(1) restricts only "government speech" and therefore poses no threat of a constitutional violation. *See Pleasant Grove City v. Summum*, 555 U.S. 460, 467 (2009) ("The Free Speech Clause . . . does not regulate government speech."). We have not been asked about this issue, and we therefore express no opinion on it.

13

S.W.3d 759, 764 (Tex. 2020) (rejecting interpretation of a statute that was "contrary to the statute's text"); *Hoskins v. Hoskins*, 497 S.W.3d 490, 493–94 (Tex. 2016) ("When statutory text is clear and unambiguous, we construe that text according to its plain and common meaning unless a contrary intention is apparent from the statute's context.").

### 2. Solicitation is not limited to demanding submission of a vote-by-mail application.

The Fifth Circuit next asks whether "solicits" is "limited to demanding submission of an application for mail-in ballots (whether or not the applicant qualifies)." 2022 WL 832239, at *6. Plaintiffs suggest that the ordinary meaning of "solicit" includes speech that lacks the insistence normally associated with a demand. According to Plaintiffs, the term's ordinary meaning includes speech that is far less forceful. Indeed, under their view, solicitation includes all the following: "requesting, urging, encouraging, seeking, imploring, or inducing."

Paxton argues that the Legislature could not have intended to sweep so broadly. He argues, for example, that "solicits" cannot include mere encouragement of an action because the Legislature has used both "solicits" and "encourages" in many statutes, indicating that they have different meanings. *See, e.g.*, TEX. EDUC. CODE § 37.152(a) ("A person commits an offense if the person . . . solicits, encourages, directs, aids, or attempts to aid another in engaging in hazing . . . ."); TEX. PENAL CODE § 7.02(a)(2) (holding a person criminally responsible for another's offense if the person "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense"); *cf.* TEX. ELEC. CODE § 13.031(a) (stating that the purpose of appointing VDRs is "[t]o encourage voter registration"). Paxton urges us to define "solicits" to

14

exclude mere encouragement and to require "importuning or strongly urging." But Paxton also concedes that stating "please fill out this application to vote by mail" would constitute solicitation.

Whether a particular statement constitutes solicitation for purposes of Section 276.016(a)(1) will, of course, be informed by the precise words spoken and by surrounding context. We therefore do not endeavor to articulate today a comprehensive definition of "solicits" as the term is used in Section 276.016(a)(1). Nor do we express an opinion as to whether any of the general categories of statements Plaintiffs say they wish to make constitutes solicitation. We will leave for another case, with a more developed record, the task of defining the term's outer reach. For today, we believe it is sufficient to hold that, for purposes of Section 276.016(a)(1), "solicits" is not limited to demands that a person submit an application to vote by mail. As Paxton acknowledges, "solicits" includes statements that fall short of a demand, such as "please fill out this application to vote by mail."

### 3. Telling potential voters they have the opportunity to apply for mail-in ballots does not constitute solicitation under Section 276.016(a)(1).

Finally, the Fifth Circuit asks whether the statute "broadly cover[s] . . . telling those who are elderly or disabled, for example, that they have the opportunity to apply for mail-in ballots." 2022 WL 832239, at *6. We conclude speech of this nature falls outside the purview of Section 276.016(a)(1) because it qualifies as "provid[ing] general information about voting by mail, the vote by mail process, or the timelines associated with voting," which is expressly excluded from Section 276.016(a). TEX. ELEC. CODE § 276.016(e)(1). The Legislature

15

intended to distinguish between merely informing Texans of the option to vote by mail and soliciting them to submit an application to vote by mail when they have not requested one. Indeed, Paxton acknowledges that stating "voting by mail is a great option if you can't get to the polls" would not qualify as solicitation. Thus, without expressing an opinion as to any particular statement Plaintiffs may wish to make, we conclude that Section 276.016(a)(1) does not include broad statements such as telling potential voters that they have the opportunity to apply for mail-in ballots.

**C.      The parties agree that Attorney General Paxton cannot enforce Section 31.129 against Longoria, the elections administrator in this case.**

In this Court, the parties take the position that Paxton lacks authority to seek civil penalties under Section 31.129. But the parties took more measured positions in the federal courts. Paxton argued in the district court only that Longoria failed to present evidence that he had authority to enforce Section 31.129. As with the first certified question, Paxton identified the question of whether he could seek civil penalties as an unsettled state-law issue that justified *Pullman* abstention. Longoria responded that Paxton's unwillingness to admit or deny whether he was authorized to enforce Section 31.129 was sufficient to establish an exception to sovereign immunity. Longoria also relied on another civil suit filed by Paxton relating to mail-in ballot applications and public statements to suggest that Paxton "may well invoke that same authority to enforce Section 31.129."

The district court concluded that Paxton had a sufficient connection to enforcement of Section 276.016(a)(1) through

16

Section 31.129 that Longoria's claims against him were not barred by sovereign immunity. 2022 WL 447573, at *11–13. In the Fifth Circuit, Paxton again argued only that Longoria failed to demonstrate whether he had authority to enforce Section 31.129 without taking a definitive position on the question. Plaintiffs responded that Paxton has the requisite connection to enforcement of Section 31.129 because "the Election Code and its context make clear that the Attorney General may or must bring civil enforcement actions under the Election Code."

Thus, as with the first certified question, the Fifth Circuit quite reasonably expected that the parties would take adverse positions in this Court on the question of the Attorney General's authority to enforce Section 31.129. Instead, the parties now agree that Paxton has no such authority with respect to the parties before us. Accordingly, following the rationale described in our response to the first certified question, we answer the third certified question "no" based solely on the fact of the parties' agreement that Paxton lacks authority to enforce Section 31.129, such that our response shall have no effect beyond this case.

### III. Conclusion

We answer the first and third certified questions "no" based solely on the fact of the parties' agreement. With respect to the second certified question, we answer: (1) Section 276.016(a)(1)'s definition of "solicits" is not narrowly limited to seeking application of violative mail-in ballots, (2) solicitation under the statute is not limited to demands for submission of an application to vote by mail, and

17

(3) Section 276.016(a)(1) does not cover telling voters they have the opportunity to apply for mail-in ballots.

_____
Rebeca A. Huddle
Justice

**OPINION DELIVERED:** June 10, 2022